**Sergeant Perry WATKINS, Plaintiff,**

v.

**UNITED STATES ARMY, et al., Defendants.**

No. C81–1065R.

United States District Court, W. D. Washington.

May 18, 1982.

James E. Lobenz, American Civil Liberties Union of Washington, Seattle, Wash., for plaintiff.

Stanley E. Alderson, Dept. of Justice, Washington, D. C., Christopher L. Pickrell, Asst. U. S. Atty., Seattle, Wash., for defendants.

## MEMORANDUM AND ORDER

ROTHSTEIN, District Judge.

THIS MATTER comes before the court on the parties' cross motions for summary judgment. These motions incorporate the arguments made in support of and in opposition to defendants' earlier motion to dismiss. The history of the litigation is as follows.

On October 13, 1981 plaintiff filed an amended complaint seeking a temporary restraining order and preliminary and permanent injunctions prohibiting defendants from discharging plaintiff from the United States Army on grounds of homosexuality. At a hearing on plaintiff's application for the temporary restraining order on October 23, plaintiff asked the court to enjoin an Army administrative discharge board, scheduled to convene on October 28, from considering plaintiff for discharge. The court declined to enter a restraining order, but retained jurisdiction over plaintiff's request for preliminary injunctive relief and directed the parties to inform the court before any action adverse to plaintiff was taken pursuant to a recommendation that the discharge board might make.

The three member board convened at Fort Lewis, Washington on October 28. After hearing testimony and the arguments of counsel, on October 29 a two member majority found that plaintiff was "undesirable for further retention in the military service because he has stated that he is a homosexual," and recommended that plaintiff be issued an honorable discharge certificate. Transcript of Proceedings (Tr.) at 429. The dissenting member concluded that plaintiff had not been proved to be a homosexual as defined by Army regulations and recommended that plaintiff not be discharged. *Id.*

Major General Robert M. Elton, commander of the 9th Infantry Division of the United States Army and the discharge authority for the administrative proceeding, requested an exception to the application of Army Regulation (AR) 635–200, ¶ 1–19*b* from Headquarters, Department of the Army (HQDA). Defendants' Memorandum at 7. Plaintiff submitted a rebuttal letter. Exhibit A to Plaintiff's Motion to Strike Defendants' Motion to Dismiss. After HQDA granted the requested exception, MG Elton approved the finding and recommendation of the majority and made the following additional finding:

I also find, based upon a preponderance of the evidence properly before the board,

that SSG Perry J. Watkins has engaged in homosexual acts with other soldiers. Report of Proceedings at 3. MG Elton directed plaintiff's discharge to occur on April 19, 1982. On April 12 this court, having retained jurisdiction over plaintiff's motion for injunctive relief, entered a preliminary injunction staying plaintiff's discharge from the Army until the court could rule on the instant motions for summary judgment. On May 7, 1982 defendants filed a notice of appeal from the court's injunction. Before proceeding further with a discussion of the instant motions, the court must indicate that an appeal from a preliminary injunction does not divest the trial court of jurisdiction to proceed with the action on the merits. *Ex parte National Enameling & Stamping Co.*, 201 U.S. 156, 162, 26 S.Ct. 404, 406, 50 L.Ed. 707 (1906); *Phelan v. Taitano*, 233 F.2d 117, 119 (9th Cir. 1956); *Thomas v. Board of Education*, 607 F.2d 1043, 1047 n.7 (2d Cir. 1979), *cert. denied*, 444 U.S. 1081, 100 S.Ct. 1034, 62 L.Ed.2d 765 (1980); 9 Moore's Federal Practice ¶ 203.11, at 3–54 & n.42 (2d ed. 1980).

The facts of the case are not in dispute. On August 27, 1967 plaintiff reported to an Army facility for his preinduction physical examination. On a Report of Medical History plaintiff checked the box "YES" indicating that he then had homosexual tendencies or had experienced homosexual tendencies in the past. Tr. at Inclosure 7. A psychiatrist evaluated plaintiff and found him "qualified for admission." *Id.* Following induction and training, plaintiff served in the United States and Korea as a chaplain's assistant, personnel specialist, and company clerk. Defendants' Memorandum at 3. While at Fort Belvoir, Virginia in November 1968, plaintiff stated to an Army Criminal Investigation Division agent that he had been a homosexual since the age of 13 and had engaged in homosexual relations with two servicemen. Tr. at Inclosure 9. The investigation of plaintiff for committing sodomy, a criminal offense under Article 125 of the Uniform Code of Military

Justice, 10 U.S.C. § 925, was dropped because of insufficient evidence. Tr. at Inclosure 10, at 2. Plaintiff received an honorable discharge from the Army on May 8, 1970 at the conclusion of his tour of duty. Official Military Personnel File at 47. His reenlistment eligibility code was listed as "unknown." *Id.*

In May 1971 plaintiff requested correction of the reenlistment designation in his release papers, and on June 3 the Army notified him that his reenlistment code had been corrected to category 1, "eligible for reentry on active duty." *Id.* at 48. On June 18 plaintiff reenlisted for a period of three years. *Id.* at 56. During the fall of 1971, with the permission of the acting commanding officer of his unit, plaintiff performed an entertainment act as a female impersonator before the troops at a celebration of Organization Day for the 56th Brigade. Amended Complaint ¶ 19. Plaintiff's performance was reported in the December 1, 1971 issue of *Army Times*, a publication distributed to Army personnel worldwide. *Id.* ¶ 20. In the spring of 1972, plaintiff performed as a female impersonator at the Volks Festival in Berlin, West Germany, with the express permission of his commanding officer. *Id.* ¶ 22. In January 1972, plaintiff was denied a security clearance based on his November 1968 statements concerning his homosexuality. Military Intelligence File at 22.

On March 21, 1974 plaintiff reenlisted for six years and was subsequently reassigned to South Korea as a company clerk. Official Military Personnel File at 65. In October 1975, plaintiff's commander initiated elimination proceedings against plaintiff for unsuitability due to homosexuality pursuant to AR 635–200, Chapter 13.[1] On October 14, 1975 a four member board convened at Camp Mercer, South Korea and heard testimony indicating that plaintiff was a homosexual and the arguments of counsel. Military Intelligence File at 84. Captain Albert J. Bast III testified that as plaintiff's commander he had discovered, through a back-

---

1. Chapter 13 of AR 635–200 has been superseded by the present regulation concerning separa-  tions by reason of homosexuality, AR 635–200, Chapter 15 (effective September 1, 1981).

ground records check, that plaintiff had a history of homosexual tendencies. When Bast asked plaintiff about it, plaintiff stated that he was a homosexual. *Id.* at 85. Bast testified further that plaintiff was "the best clerk I have known," and that plaintiff's homosexuality did not affect the company. *Id.* First Sergeant Owen Johnson testified that everyone in the company knew that plaintiff was a homosexual and that plaintiff's homosexuality had not caused any problems or elicited any complaints. *Id.* at 86. The board made the following unanimous finding: "SP5 Perry J. Watkins is suitable for retention in the military service." *Id.* at 87. The board's recommendation was that plaintiff "be retained in the military service," and that plaintiff was "suited for duty in administrative positions and progression through Specialist rating." *Id.* The convening authority apparently agreed with the board's finding and recommendations.

Following an assignment in the United States as a unit clerk, plaintiff was reassigned to Germany, where he served as a clerk and a personnel specialist with the 5th United States Army Artillery Group. In November 1977 the commander of the 5th USAAG granted plaintiff a security clearance for information classified as "Secret." *Id.* at 14. Thereafter plaintiff applied for a position in the Nuclear Surety Personnel Reliability Program, to qualify for which an applicant must have a security clearance for information classified as "Secret" and must pass a background investigation check. Amended Complaint ¶ 28. Plaintiff was initially informed that, because his medical records showed he had homosexual tendencies, he was ineligible for a position in the program. Defendants' Memorandum at 5 n.1; Amended Complaint ¶ 29. Plaintiff appealed. *Id.* ¶ 30. In support of his appeal plaintiff's commanding officer, Captain Dale E. Pastian, requested that plaintiff be requalified because plaintiff had been medically cleared, because of plaintiff's "outstanding professional attitude, integrity, and suitability for assignment" in the program, and because the 1975 Chapter 13 board recommended that plaintiff be re-tained and be allowed to progress in the military. Military Intelligence File at 68. Examining physician Lieutenant Colonel J. C. De Tata, M.D., concluded that plaintiff's homosexuality appeared to cause no problems in his work and noted that plaintiff had been through a Chapter 13 board "with positive results." *Id.* at 70. The decision to deny plaintiff's eligibility for the Nuclear Surety Program was reversed and plaintiff was accepted into the program in July 1978. *Id.* at 64.

Following an investigation by military intelligence in the spring of 1979, the commander of the U. S. Army Personnel Clearance Facility by letter dated December 18, 1979 notified plaintiff of the Army's intent to revoke his security clearance. *Id.* at 12. The letter stated that revocation was being sought "because during an interview on 15 March 1979, you stated that you have been a homosexual for the past 15 to 20 years." *Id.* Plaintiff submitted a rebuttal letter on May 29, 1980 admitting making that statement. *Id.* at 8. The commanding officer of the Central Security Facility revoked plaintiff's security clearance by letter dated July 10, 1980. *Id.* at 6.

In February 1981 plaintiff appealed the revocation to the Office of the Assistant Chief of Staff for Intelligence. Amended Complaint, Exhibit J–2. Upon discovering in May that his appeal letter had apparently been misplaced or lost, plaintiff sent a second copy of the February letter to Ronald W. Morgan of the Office of the Assistant Chief of Staff for Intelligence. *Id.* ¶ 35. That office referred the matter to the Army's Deputy Chief of Staff for Personnel for a determination whether the newly promulgated Chapter 15 of AR 635–200 required or permitted plaintiff's discharge. Defendants' Memorandum at 6. The Assistant Chief of Staff's Office stayed action on plaintiff's appeal pending the determination whether proceedings under Chapter 15 would be commenced. Declaration of Ronald W. Morgan, filed April 12, 1982. Plaintiff brought this action on August 31, 1981 challenging the revocation of his security clearance because he had admitted to being

a homosexual and seeking to prevent his discharge from the Army for homosexuality.

After receiving an opinion from the Judge Advocate General (JAG) of the Army that AR 635–200, ¶ 1–19*b*, the Army's regulatory "double jeopardy" provision, did not preclude plaintiff's discharge for homosexuality, the Deputy Chief of Staff's Office referred the matter to plaintiff's commander for appropriate action under Chapter 15. Defendant's Memorandum at 6; *see* Tr. at Inclosure 4. Plaintiff received notice of his commander's decision to hold a Chapter 15 discharge proceeding by letter dated September 17, 1981. Tr. at Inclosure 3. Plaintiff amended his complaint on October 12 and sought a temporary restraining order enjoining the Army from convening an administrative discharge board. As stated earlier, the court declined to enter a temporary restraining order, the board recommended that plaintiff be given an honorable discharge, and MG Elton approved that recommendation.

Plaintiff's amended complaint alleges that the revocation of his security clearance violates substantive and procedural due process requirements, the First Amendment, principles of equal protection, and is based on an unconstitutionally vague provision. Plaintiff further alleges that discharging him under AR 635–200, Chapter 15 is unconstitutional because Chapter 15 is void on its face and as applied to plaintiff, and because due process, privacy, First Amendment and estoppel principles prevent it. Plaintiff prays for a permanent injunction barring defendants from discharging plaintiff from the Army on grounds of homosexuality, and requiring defendants to reinstate plaintiff's security clearance and not revoke it in the future based on plaintiff's homosexuality. Plaintiff also requests a declaratory judgment that AR 635–200, Chapter 15 is unconstitutional on its face. Finally, plaintiff asks that the court enter an injunction prohibiting defendants from ever failing to promote or decorate, or from taking any action to retard or hinder plaintiff's Army career because of his homosexuality.

## I. Exhaustion of Administrative Remedies

■■■ The first question is whether exhaustion before the Army Board for Correction of Military Records (ABCMR) is required. The ABCMR is established pursuant to 10 U.S.C. § 1552 and 32 C.F.R. § 581.3 and is given the function of reviewing applications properly before it "for the purpose of determining the existence of an error or an injustice." 32 C.F.R. § 581.-3(b)(2). The board may "correct any military record . . . to correct an error or remove an injustice." 10 U.S.C. § 1552(a). Unlike the Army Discharge Review Board, established pursuant to 10 U.S.C. § 1553 and 32 C.F.R. § 581.2, which reviews only the *type* of discharge given a servicemember, the ABCMR may review the *fact* of discharge. *Hodges v. Callaway*, 499 F.2d 417, 421 (5th Cir. 1974).

The specific question whether a servicemember challenging an Army discharge decision must exhaust to the ABCMR was considered in *Montgomery v. Rumsfeld*, 572 F.2d 250 (9th Cir. 1978). There, plaintiffs were trying to be released from the Army on the grounds that promises made to them when they enlisted were not kept. The district court dismissed because plaintiffs had not sought review before the ABCMR. The court of appeals reversed, holding that appeal to the ABCMR is not a statutorily mandated prerequisite to federal court jurisdiction, and remanded so the district court could weigh the appropriate factors to determine whether exhaustion was required. Those factors are "[1] the need for an administrative record for proper judicial review, [2] the agency's interests in applying its expertise, in correcting its own errors, and preserving the efficacy and independence of its administrative system, and [3] particularly, the district court should carefully consider 'whether allowing all similarly situated [individuals] to bypass [the administrative avenue in question] would seriously impair the [agency's] ability to perform its functions.'" *Id.* at 254 (citations omitted).

Here, the first and third of those factors are easily dealt with. An administrative record adequate for judicial review already exists: the Chapter 15 proceeding was transcribed and all documentary evidence before the board was made a part of the record, and plaintiff's military personnel and military intelligence files have been submitted to the court. And certainly there are few, if any, persons situated similarly to plaintiff, so the Army's ability to perform its military function would not in any way be impaired by not requiring exhaustion.

The second factor, when analyzed closely, also indicates that judicial review at this time would be appropriate. The question whether plaintiff's discharge is permissible is exclusively a question of law; there is no dispute as to material facts. Yet the ABCMR has no expertise in matters of law:

> The boards rarely determine legal questions themselves. Instead each board relies almost exclusively on the opinions of its service's Office of the Judge Advocate General.[261]

[261] The Army BCMR relies on opinions of the Office of the Judge Advocate General of the Army or the General Counsel of the Army. Letter from Executive Secretary, Army Board for the Correction of Military Records, March 3, 1971. . . .

Lunding, *Judicial Review of Military Administrative Discharges*, 83 Yale L.J. 33, 70 & n.261 (1973); see 32 C.F.R. § 581.-3(h)(1)(ii) (ABCMR authorized to call upon any department of Army for assistance within area of that department's jurisdiction). Here, of course, the Judge Advocate General advised the Deputy Chief of Staff for Personnel that there was no legal barrier to processing plaintiff for discharge under Chapter 15. Defendants' Memorandum at 6. An appeal to the ABCMR challenging the legality of processing plaintiff for discharge would therefore be futile, because the board and the Secretary would rely on the very legal opinion being challenged. This was precisely the reasoning in *Beaty v. Kenan*, 420 F.2d 55, 59 (9th Cir. 1969), where the court held exhaustion before the ABCMR unnecessary.

For the same reason, the Army's interest in correcting its own errors would not be furthered by requiring exhaustion to the ABCMR. Finally, the court is of the opinion that the efficacy and independence of the military administrative system has been sufficiently preserved and protected by the court's encouraging exhaustion before the Chapter 15 board and declining to act affirmatively until now.

## II. Reviewability of Military Decision

Having determined that exhaustion before the ABCMR is unnecessary, the court must still determine whether the Army's decision to discharge plaintiff is reviewable under the standards of *Wallace v. Chappell*, 661 F.2d 729 (9th Cir. 1981). Plaintiff here alleges a violation of the Constitution and military regulations and he has exhausted effective intraservice remedies. The court must now weigh: (1) the nature and strength of plaintiff's claim; (2) the potential injury to plaintiff if review is refused; (3) the extent of interference with military functions; and (4) the extent to which military discretion or expertise is involved. *Id.* at 732–33. For the reasons given below, the court is of the opinion that plaintiff's claim that his discharge is invalid is not only strong, but requires that partial summary judgment be entered in his favor. If review is refused, plaintiff will lose his career in the military and his 14 year investment toward retirement benefits. The court's action will necessarily cause some interference with military functions; that alone cannot preclude review. *See id.* at 733. Here, the military function of defending this country will not be disturbed by the court's reviewing plaintiff's claims, but some interference with the military function of regulating its own personnel will occur. According to the defendants, the decision to discharge did not involve discretion. Declaration of Major General Robert M. Elton, dated April 9, 1982. And deciding plaintiff's legal claims does not require military expertise. On the contrary, it requires an expertise that the ABCMR, a civilian board of nonlawyers, lacks. *See* 32 C.F.R. § 581.3(b)(ii). On balance, then, the court

concludes that the degree of intrusion into military affairs occasioned by the court's review of plaintiff's claim is more than outweighed by the strength of plaintiff's claim, the risk of harm to him if review is refused, and the expertise of the court as opposed to the ABCMR.

### III.  Validity of Plaintiff's Discharge

█ Having determined that plaintiff's claims are presently reviewable, the court turns to the question whether the decision to discharge plaintiff was proper.  The military decision must be affirmed unless it was arbitrary or capricious, unsupported by substantial evidence, or contrary to law.  *Sanford v. United States*, 399 F.2d 693, 694 (9th Cir. 1968) (per curiam); *Hodges v. Callaway, supra*, 499 F.2d at 423; *Peppers v. United States Army*, 479 F.2d 79, 83–84 (4th Cir. 1973); *Doe v. Chafee*, 355 F.Supp. 112, 114 (N.D.Cal.1973); *see also* 5 U.S.C. § 706(2)(C), (D).

█ It is well settled that the Army must abide by its own regulations.  *Harmon v. Brucker*, 355 U.S. 579, 582, 78 S.Ct. 433, 435, 2 L.Ed.2d 503 (1958) (per curiam); *Grimm v. Brown*, 449 F.2d 654 (9th Cir. 1971); *Van Bourg v. Nitze*, 388 F.2d 557 (D.C.Cir.1967). The Army regulation at issue in this case provides in pertinent part as follows:

> *b.*  Separation pursuant to this regulation should not be based on conduct which has already been considered at a prior administrative or judicial proceeding and disposed of in a manner indicating that separation is not warranted.  Accordingly, administrative separations under the provisions of chapter 13, 14 and 15 of this regulation and AR 604–10 are subject to the following restrictions and no member will be considered for administrative separation because of conduct which—
>
> . . . .
>
> (2) Has been the subject of administrative proceedings resulting in a final determination that the member should be retained in the service.
>
> . . . .

> *c.*  The restrictions in *b* above are not applicable when—
>
> (1) *Substantial new evidence*, fraud, or collusion is discovered, which was not known at the time of the original proceeding, despite the exercise of due diligence, and which will probably produce a result significantly less favorable for the soldier at a new hearing.
>
> (2) *Subsequent conduct* by the soldier warrants consideration for separation. Such conduct need not independently justify the soldier's discharge, but must be sufficiently serious to raise a question as to his potential for further useful military service.  This exception, however, does not permit further consideration of conduct of which the soldier has been absolved in a prior final factual determination by an administrative or judicial body.
>
> (3) An *express exception* has been granted by HQDA pursuant to a request by a convening authority through channels that, due to the unusual circumstances of the case, administrative separation should be accomplished.  Prior to forwarding the case, however, the member will be advised of the convening authority's intentions in this regard, given the opportunity to review the proposed forwarding correspondence, and be permitted to present written matters in rebuttal thereto if desired.

AR 635–200, ¶ 1–19*b* & *c* (September 1, 1981) (emphasis added).

As stated earlier, in October 1975 a four member administrative board, convened to consider whether plaintiff should be discharged under the predecessor regulation to Chapter 15, unanimously recommended that plaintiff "be retained in the military service" and be eligible for promotion.  The board's determination apparently was adopted by the discharge authority and became final.  Defendants' Memorandum at 6.

At the close of the Army's case at Fort Lewis last October, the Legal Advisor heard

argument on the applicability of ¶ 1–19*b*.[2] He ruled that ¶ 1–19*b* was inapplicable for two reasons. Under ¶ 1–19*c*(2), he found that there was proof of subsequent conduct on the part of plaintiff which the board was entitled to consider. Tr. at 228–29. That conduct evidently could include, or be limited to, plaintiff's March 15, 1979 statement to a military intelligence agent that he was a homosexual, as is reflected by the Advisor's instructions to the board. Tr. at 417–18. Second, the Advisor found that Inclosure 4 to the Transcript of Proceedings, consisting of a letter from HQDA, was an express exemption to the applicability of ¶ 1–19*b*. Plaintiff excepted to the ruling.

The court is constrained to hold that the Advisor's ruling was arbitrary, unsupported by substantial evidence, and contrary to law. "Subsequent conduct" evidence consisted of testimony relating to two incidents. Specialist Fourth Class Andrew K. Snook testified to being picked up while hitchhiking on or about July 4, 1980 by a black staff sergeant in a silver or gray car with light colored license plates. Snook testified that the sergeant squeezed his leg in a homosexual advance. Snook was unable to identify plaintiff in a line-up conducted on October 28, 1981 at Fort Lewis. Captain Hugh M. Bryan, who was the unit commander at Fort Lewis in 1980 when the alleged incident took place, testified that after talking with Snook he believed that the staff sergeant who had given Snook a ride was plaintiff. Plaintiff later testified to owning a silver car with light colored license plates. On cross examination, Captain Bryan admitted that there were probably thousands of black staff sergeants at Fort Lewis, and that probably a couple of hundred of them had light colored cars.

The other alleged incident was testified to by PFC David P. Valley. Valley testi-

fied that plaintiff asked him if he'd like to move into plaintiff's apartment with him, and that plaintiff used to come by the mailroom and stare at Valley. Plaintiff denied both allegations. On cross examination, Valley indicated that he was not sure that plaintiff had been making an advance toward him. In addition, Valley admitted to being prejudiced against black people and against homosexuals, having once had a bad experience with a homosexual, and related that he had been disciplined once by a board of which plaintiff was a member. The rest of the evidence presented by the Army was relevant only to the quality of plaintiff's performance and the character of the discharge plaintiff would receive.

■■ The board rejected the evidence that plaintiff had engaged in homosexual acts with Snook and Valley. It returned the single finding that plaintiff had stated he was a homosexual, and, following the Advisor's instructions, made the recommendation that plaintiff be discharged. Plaintiff's candid admission in 1967 that he had homosexual tendencies undoubtedly would have been a proper basis for denying him eligibility for service duty or enlistment. *See Beller v. Middendorf,* 632 F.2d 788 (9th Cir. 1980). Plaintiff's restatement of that fact subsequent to 1975, however, standing alone, cannot justify his discharge. No member can be separated "because of conduct which ... has been the subject of administrative proceedings resulting in a final determination that the member should be retained in the service." AR 635–200, ¶ 1–19*b*(2).[3] The 1975 Chapter 13 board had before it evidence that plaintiff admitted he was a homosexual. The regulation in effect at that time provided for separation of members who had homosexual tendencies whether or not homosexual acts had been committed. AR 635–200, ¶ 13–5(b)(5)

---

**2.** The Legal Advisor had already ruled that the restriction imposed by ¶ 1–19*b* could not be avoided by reliance on ¶ 1–19*c*(1). Tr. at 93. That ruling was apparently acquiesced in by Captain James W. Larson, the Army's representative at the proceeding. The Legal Advisor's ruling as to ¶ 1–19*c*(1) has not been challenged in this court.

**3.** The Army treated plaintiff's admissions as "conduct" at the Chapter 15 proceeding, Tr. at 217, and as the equivalent of conduct before this court, Defendant's Reply Memorandum at 6 n.2.

(effective November 23, 1972). The 1975 proceedings resulted in a final determination that plaintiff should be retained in the Army. Accordingly, plaintiff cannot be separated because he has admitted that he is a homosexual.

The fact that he has repeated his admission subsequent to 1975 does not change this result. Plaintiff's admissions appear to have been made, in every instance, in response to questioning by a superior officer. Aside from the unfairness of penalizing plaintiff for his honesty in responding to official questioning, plaintiff's reiteration of a fact which the 1975 Chapter 13 board found did not require his separation cannot be considered "subsequent conduct" under ¶ 1–19c (2). That *fact* was the subject of the prior administrative proceeding.

█ The Legal Advisor was also in error in ruling that the letter from HQDA, Inclosure 4 to the Transcript of Proceedings, was an "express exception" to the double jeopardy bar of ¶ 1–19b (2). *See* Tr. at 231. Inclosure 4 does not even purport to be an express exception under ¶ 1–19c (3), nor were the procedural requirements of that paragraph followed with respect to Inclosure 4. Were Inclosure 4 such an exception, MG Elton would have had no need to petition HQDA for an exception ruling after he received the board's recommendation.

█ Defendants argue, however, that the express exception obtained by MG Elton sometime after December 23, 1981 permits plaintiff's discharge. The court cannot agree. The administrative discharge board concluded on October 29, 1981 that plaintiff should be discharged because he had stated he was a homosexual. Yet the regulation only permits separation under Chapter 15 when an exception "has been granted . . . [p]rior to forwarding the case . . . ." AR 635–200, ¶ 1–19c (3) (emphasis added). The exemption obtained by MG Elton sometime after December was not a prior express exemption as is contemplated by the regulation. In *Cuadra v. Resor*, 437 F.2d 1211 (9th Cir. 1970) (per curiam), the Army's failure to follow its own regulation, which required it to obtain Selective Service ad-

vice *before* acting on an application for a hardship discharge, required vacation of the district court's judgment for the Army. The Army had denied plaintiff's application for discharge, then, after plaintiff sued, had sought Selective Service advice. Similarly, in the case at bar, the Army convened the discharge board which recommended discharge, then, *after* plaintiff raised the bar of ¶ 1–19b at the proceeding, obtained the exemption allowing it to accomplish separation. Defendant's Memorandum at 7.

Even if retroactive application were sufficient under ¶ 1–19c (3), however, the determination by HQDA that an express exception was proper was arbitrary. The Adjutant General's letter requesting the express exception argues that ¶ 1–19b (2) does not make "any allowance for eliminations based upon a change in policy." *See* Exhibit A to Plaintiff's Motion to Strike Defendants' Motion to Dismiss. It then requests that an exception be granted because the new policy expressed in Chapter 15 is an "unusual circumstance." The flaw in the Adjutant General's argument, and HQDA's action thereon, is apparent. Paragraph 1–19b itself states: "[A]dministrative separations under the provisions of chapter 13, 14 and 15 of this regulation . . . are subject to the [double jeopardy] restrictions . . . ." Hence HQDA's determination that the new policy expressed in Chapter 15 was an "unusual circumstance" that warranted denying plaintiff the protection of ¶ 1–19b (2) was contrary to ¶ 1–19b itself.

The court's determination that the instant discharge of plaintiff is void because it cannot be predicated on his statements that he is a homosexual is bolstered by evidence that the Army previously declined to process plaintiff under Chapter 15 because of the double jeopardy bar. Major Palmer Penny, 9th Aviation Battalion, testified at the Chapter 15 proceedings that in the summer of 1980 he had looked into holding a Chapter 13 proceeding. Penny stated that he had contacted members of the Adjutant General's office to ascertain whether a Chapter 13 proceeding was possible. Tr. at 69. According to Penny, "the

AG folks" had told him that a Chapter 13 was not permissible because plaintiff had already been cleared by a prior Chapter 13 board. *Id.* at 70, 73 ("[A]ll avenues were closed unless Sergeant Watkins . . . approached someone . . . ." *Id.* at 72.). Then, after Private Snook complained about the hitchhiking incident, Penny again sought advice from the Adjutant General's office. Penny testified that the Adjutant General's office advised him that the Snook incident did not constitute substantial evidence against plaintiff. *Id.* at 74–75. The matter was therefore dropped. *Id.*

Nor does MG Elton's supplemental finding of acts render the double jeopardy bar inapplicable. The regulation states that, if the administrative board recommends discharge, the discharge authority shall "(1) Approve the finding and direct separation; or (2) Disapprove the finding . . . ." AR 635–200, ¶ 15–11*b; accord,* 32 C.F.R. § 41.-13(e)(4)(ii)(B). The option to make additional findings is not available.[4]

In light of all the foregoing, noting in particular the basic unfairness of discharging plaintiff because he repeated after 1975 the same statement he made at every critical juncture during his Army career, the court rules that plaintiff's motion for summary judgment is GRANTED IN PART and DENIED IN PART as follows:

1. Defendants may not discharge plaintiff because he has stated in the past or will state in the future that he is a homosexual. The court expresses no opinion whether plaintiff can validly be discharged in the event the Army proves the commission of homosexual acts by plaintiff that have not been the subject of administrative proceedings.

2. No determination concerning the correctness of the Army's decision to revoke plaintiff's security clearance will be made at this time. Insofar as plaintiff has an appeal pending before the Assistant Chief of Staff for Intelligence the issue is not ripe.

3. Further briefing is necessary on the issue whether defendants should be enjoined, under principles of estoppel and under military regulations, from denying plaintiff reenlistment when his current tour of duty expires in October 1982. The court retains jurisdiction over plaintiff's claim that such denial is prohibited and Orders the parties to submit briefs on the issue in accordance with the following schedule:

Plaintiff's brief is due June 11;

Defendants' response is due June 25;

Plaintiff's reply, if any, is due July 2.

4. Because of the court's resolution of the issues of plaintiff's discharge and the revocation of plaintiff's security clearance, the court finds it unnecessary to render a declaratory judgment that AR 635–200, Chapter 15 is unconstitutional.

5. The court further Orders that plaintiff's status shall not be diminished by defendants as a result of this lawsuit; this includes, but is not limited to, plaintiff's right to attend Army training programs.

Defendants' motion for summary judgment is DENIED.

---

4. The court does not agree with defendants that AR 15–6, ¶ 2–3*a* allowed MG Elton to make an additional finding. To the extent it is inconsistent with AR 635–200, AR 15–6 does not apply to discharges under AR 635–200.

*See* AR 635–200, ¶ 1–23*e.* The particularized requirements of ¶ 15–11*b* quoted in the text are inconsistent with ¶ 2–3*a* of AR 15–6. MG Elton was therefore limited by the provisions of Chapter 15, AR 635–200.