729 F.2d 1270
 34 Fair Empl.Prac.Cas. 459,
34 Empl. Prac. Dec. P 34,357, 16 Ed. Law Rep. 1035
 The NATIONAL GAY TASK FORCE and on behalf of all teachers
and principals prospectively and presently employed by the
Board of Education of the City of Oklahoma City, State of
Oklahoma, and who are similarly situated, Plaintiff-Appellant,
v.
The BOARD OF EDUCATION OF the CITY OF OKLAHOMA CITY, State
of Oklahoma, Defendant-Appellee.
 No. 82-1912.
 United States Court of Appeals,
Tenth Circuit.
 March 14, 1984.
 
 William B. Rogers of the American Civil Liberties Union of Oklahoma, Oklahoma City, Okl. (Leonard Graff and Don Knutson of Gay Rights Advocates, Inc., San Francisco, Cal., with him on the brief), for plaintiff-appellant.
 Larry Lewis, Oklahoma City, Okl., for defendant-appellee.
 Sally E. Scott, Oklahoma City, Okl., filed an amicus curiae brief for the Speech Communication Ass'n.
 Fred Okrand, Laurence R. Sperber, and Susan McGreivy, Los Angeles, Cal., filed an amicus curiae brief for the National Gay and Lesbian Rights Project of the American Civil Liberties Union.
 E. Carrington Boggan and Rosalyn Richter, New York City, filed an amicus curiae brief for the Lambda Legal Defense and Education Fund, Inc.
 Before BARRETT, McKAY and LOGAN, Circuit Judges.
 LOGAN, Circuit Judge.
 
 
 1
 The National Gay Task Force (NGTF), whose membership includes teachers in the Oklahoma public school system, filed this action in the district court challenging the facial constitutional validity of Okla.Stat. tit. 70, Sec. 6-103.15. The district court held that the statute was constitutionally valid. On appeal NGTF contends that the statute violates plaintiff's members' rights to privacy and equal protection, that it is void for vagueness, that it violates the Establishment Clause, and, finally, that it is overbroad.
 
 
 2
 The challenged statute, Okla.Stat. tit. 70, Sec. 6-103.15, provides:
 
 
 3
 "A. As used in this section:
 
 
 4
 1. 'Public homosexual activity' means the commission of an act defined in Section 886 of Title 21 of the Oklahoma Statutes, if such act is:
 
 
 5
 a. committed with a person of the same sex, and
 
 
 6
 b. indiscreet and not practiced in private;
 
 
 7
 2. 'Public homosexual conduct' means advocating, soliciting, imposing, encouraging or promoting public or private homosexual activity in a manner that creates a substantial risk that such conduct will come to the attention of school children or school employees; and
 
 
 8
 3. 'Teacher' means a person as defined in Section 1-116 of Title 70 of the Oklahoma Statutes.
 
 
 9
 B. In addition to any ground set forth in Section 6-103 of Title 70 of the Oklahoma Statutes, a teacher, student teacher or a teachers' aide may be refused employment, or reemployment, dismissed, or suspended after a finding that the teacher or teachers' aide has:
 
 
 10
 1. Engaged in public homosexual conduct or activity; and
 
 
 11
 2. Has been rendered unfit, because of such conduct or activity, to hold a position as a teacher, student teacher or teachers' aide.
 
 
 12
 C. The following factors shall be considered in making the determination whether the teacher, student teacher or teachers' aide has been rendered unfit for his position:
 
 
 13
 1. The likelihood that the activity or conduct may adversely affect students or school employees;
 
 
 14
 2. The proximity in time or place the activity or conduct to the teacher's, student teacher's or teachers' aide's official duties;
 
 
 15
 3. Any extenuating or aggravating circumstances; and
 
 
 16
 4. Whether the conduct or activity is of a repeated or continuing nature which tends to encourage or dispose school children toward similar conduct or activity."
 
 
 17
 The trial court held that the statute reaches protected speech but upheld the constitutionality of the statute by reading a "material and substantial disruption" test into it. We disagree. The statute proscribes protected speech and is thus facially overbroad, and we cannot read into the statute a "material and substantial disruption" test. Therefore, we reverse the judgment of the trial court.
 
 
 18
 * We see no constitutional problem in the statute's permitting a teacher to be fired for engaging in "public homosexual activity." Section 6-103.15 defines "public homosexual activity" as the commission of an act defined in Okla.Stat. tit. 21, Sec. 886, that is committed with a person of the same sex and is indiscreet and not practiced in private. In support of their argument that this provision violates their members' right of privacy, plaintiff cites Baker v. Wade, 553 F.Supp. 1121 (N.D.Tex.1982), and New York v. Onofre, 51 N.Y.2d 476, 434 N.Y.S.2d 947, 415 N.E.2d 936 (1980), cert. denied, 451 U.S. 987, 101 S.Ct. 2323, 68 L.Ed.2d 845 (1981). Both of those cases held that the constitution protects consensual, noncommercial sexual acts in private between adults. Baker and Onofre are inapplicable to the instant case. Section 6-103.15 does not punish acts performed in private. Thus, the right of privacy, whatever its scope in regard to homosexual acts, is not implicated. See Lovisi v. Slayton, 539 F.2d 349 (4th Cir.), cert. denied, 429 U.S. 977, 97 S.Ct. 485, 50 L.Ed.2d 585 (1976).
 
 
 19
 The trial court correctly rejected plaintiff's contention that the Oklahoma statute is vague in regard to "public homosexual activity." In Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc., 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982), the Court outlined the doctrines of facial overbreadth and vagueness. Regarding vagueness the Court said:
 
 
 20
 "A law that does not reach constitutionally protected conduct and therefore satisfies the overbreadth test may nevertheless be challenged on its face as unduly vague, in violation of due process. To succeed, however, the complainant must demonstrate that the law is impermissibly vague in all of its applications."
 
 
 21
 455 U.S. at 497, 102 S.Ct. at 1193. Plaintiff makes no such showing. The Oklahoma cases construing the "crime against nature" statute have clearly defined the acts that the statute proscribes.[1]
 
 
 22
 Plaintiff also argues that the statute violates its members' right to equal protection of the law. We cannot find that a classification based on the choice of sexual partners is suspect, especially since only four members of the Supreme Court have viewed gender as a suspect classification. Frontiero v. Richardson, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973). See also Baker v. Wade, 553 F.Supp. 1121, 1144 n. 58. Thus something less than a strict scrutiny test should be applied here. Surely a school may fire a teacher for engaging in an indiscreet public act of oral or anal intercourse. See Amback v. Norwick, 441 U.S. 68, 80, 99 S.Ct. 1589, 1596, 60 L.Ed.2d 49 (1979). We also agree that the district court correctly rejected the Establishment Clause claim. See Harris v. McCrae, 448 U.S. 297, 100 S.Ct. 2671, 65 L.Ed.2d 784 (1980).
 
 II
 
 23
 The part of Sec. 6-103.15 that allows punishment of teachers for "public homosexual conduct" does present constitutional problems. To be sure, this is a facial challenge, and facial challenges based on First Amendment overbreadth are "strong medicine" and should be used "sparingly and only as a last resort." Broadrick v. Oklahoma, 413 U.S. 601, 613, 93 S.Ct. 2908, 2916, 37 L.Ed.2d 830 (1973). Nonetheless, invalidation is an appropriate remedy in the instant case because this portion of Sec. 6-103.15 is overbroad, is "not readily subject to a narrowing construction by the state courts," and "its deterrent effect on legitimate expression is both real and substantial." Erznoznik v. City of Jacksonville, 422 U.S. 205, 216, 95 S.Ct. 2268, 2276, 45 L.Ed.2d 125 (1975). Also, we must be especially willing to invalidate a statute for facial overbreadth when, as here, the statute regulates "pure speech." New York v. Ferber, 458 U.S. 747, 772-773, 102 S.Ct. 3348, 3362-3363, 70 L.Ed.2d 587 (U.S.1982); Broadrick, 413 U.S. at 615, 93 S.Ct. at 2917.
 
 
 24
 Section 6-103.15 allows punishment of teachers for "public homosexual conduct," which is defined as "advocating, soliciting, imposing, encouraging or promoting public or private homosexual activity in a manner that creates a substantial risk that such conduct will come to the attention of school children or school employees." Okla.Stat. tit. 70, Sec. 6-103.15(A)(2). The First Amendment protects "advocacy" even of illegal conduct except when "advocacy" is "directed to inciting or producing imminent lawless action and is likely to incite or produce such action." Brandenburg v. Ohio, 395 U.S. 444, 447, 89 S.Ct. 1827, 1829, 23 L.Ed.2d 430 (1969). The First Amendment does not permit someone to be punished for advocating illegal conduct at some indefinite future time. Hess v. Indiana, 414 U.S. 105, 109, 94 S.Ct. 326, 329, 38 L.Ed.2d 303 (1973).
 
 
 25
 "Encouraging" and "promoting," like "advocating," do not necessarily imply incitement to imminent action. A teacher who went before the Oklahoma legislature or appeared on television to urge the repeal of the Oklahoma anti-sodomy statute would be "advocating," "promoting," and "encouraging" homosexual sodomy and creating a substantial risk that his or her speech would come to the attention of school children or school employees if he or she said, "I think it is psychologically damaging for people with homosexual desires to suppress those desires. They should act on those desires and should be legally free to do so." Such statements, which are aimed at legal and social change, are at the core of First Amendment protections. As in Erznoznik, the statute by its plain terms is not easily susceptible of a narrowing construction. The Oklahoma legislature chose the word "advocacy" despite the Supreme Court's interpretation of that word in Brandenburg. Finally, the deterrent effect of Sec. 6-103.15 is both real and substantial. It applies to all teachers, substitute teachers, and teachers aides in Oklahoma. To protect their jobs they must restrict their expression. See Erznoznik, 422 U.S. at 217, 95 S.Ct. at 2276. Thus, the Sec. 6-103.15 proscription of advocating, encouraging, or promoting homosexual activity is unconstitutionally overbroad.
 
 
 26
 We recognize that a state has interests in regulating the speech of teachers that differ from its interests in regulating the speech of the general citizenry. Pickering v. Board of Education, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968). But a state's interests outweigh a teacher's interests only when the expression results in a material or substantial interference or disruption in the normal activities of the school. See Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969). This Court has held that a teacher's First Amendment rights may be restricted only if "the employer shows that some restriction is necessary to prevent the disruption of official functions or to insure effective performance by the employee." Childers v. Independent School District No. 1, 676 F.2d 1338, 1341 (10th Cir.1982). Defendant has made no such showing.
 
 
 27
 The statute declares that a teacher may be fired under Sec. 6-103.15 only if there is a finding of "unfitness" and lists factors that are to be considered in determining "unfitness": whether the activity or conduct is likely to adversely affect students or school employees; whether the activity or conduct is close in time or place to the teacher's, student teacher's or teachers aide's official duties; whether any extenuating or aggravating circumstances exist; and whether the conduct or activity is of a repeated or continuing nature which tends to encourage or dispose school children toward similar conduct or activity. An adverse effect on students or other employees is the only factor among those listed in Sec. 6-103.15 that is even related to a material and substantial disruption. And although a material and substantial disruption is an adverse effect, many adverse effects are not material and substantial disruptions. The statute does not require that the teacher's public utterance occur in the classroom. Any public statement that would come to the attention of school children, their parents, or school employees that might lead someone to object to the teacher's social and political views would seem to justify a finding that the statement "may adversely affect" students or school employees. The statute does not specify the weight to be given to any of the factors listed. An adverse effect is apparently not even a prerequisite to a finding of unfitness. A statute is saved from a challenge to its overbreadth only if it is "readily subject" to a narrowing construction. It is not within this Court's power to construe and narrow state statutes. Grayned v. City of Rockford, 408 U.S. 104, 110, 92 S.Ct. 2294, 2299, 33 L.Ed.2d 222 (1972). The unfitness requirement does not save Sec. 6-103.15 from its unconstitutional overbreadth.
 
 III
 
 28
 The parts of Sec. 6-103.15 that deal with "public homosexual conduct" can be severed from the rest of the statute without creating a result that the legislature did not intend or contemplate. See Tulsa Exposition and Fair Corp. v. Board of County Commissioners, 468 P.2d 501, 507 (Okl.1970); see also Hejira Corp. v. MacFarlane, 660 F.2d 1356, 1362-63 (10th Cir.1981). We reverse the judgment of the district court, holding that the statute, insofar as it punishes "homosexual conduct," as that phrase is defined in the statute to include "advocating ... encouraging or promoting public or private homosexual activity" is unconstitutional. We also hold that the unconstitutional portion is severable from the part of the statute that proscribes "homosexual activity," and we find that portion constitutional.
 
 
 29
 REVERSED.
 
 BARRETT, Circuit Judge, dissenting:
 
 30
 I would affirm the district court's finding that 70 O.S. Sec. 6-103.15 passes constitutional muster on every "front" challenged. The majority opinion renders the statute ineffective. It upholds the sanctions of the statute only if there is evidence proving that a teacher has engaged in "public homosexual activity" defined in 70 O.S. Sec. 6-103.15(A.) (1.)(a.) and (b.).
 
 
 31
 The "punishment" referred to in the majority opinion which the majority holds may not be imposed on Oklahoma teachers is refusal of employment or reemployment, or dismissal or suspension if a teacher advocates, solicits, imposes, encourages or promotes "Public homosexual activity" (which, by specific reference to the Oklahoma criminal code is distinctly identified as "the unnatural, perverse, detestable and abominable act of sodomy") in a manner that creates a substantial risk that such conduct will come to the attention of school children or school employees.
 
 
 32
 It is fundamental that state legislative bodies, in the exercise of state police power, may enact reasonable regulations in the interest of public health, safety, morals and welfare over persons within state limits. Oklahoma has, by enactment of the subject statute, endeavored to protect its school children and school employees from any teacher who advocates, solicits, encourages or promotes public or private homosexual activity pinpointed as the commission of the unnatural and detestable act of sodomy. * 21 Okla.Stat.Ann. Sec. 886 entitled "Crime against nature" provides: "Every person who is guilty of the detestable and abominable crime against nature, committed with mankind or with a beast, is punishable by imprisonment in the penitentiary not exceeding ten (10) years." Oklahoma has held that this section is not unconstitutionally vague even though it is general in its terms and circumstances, inasmuch as the terms convey adequate description of prohibited act or conduct to persons of ordinary understanding. Carson v. State, 529 P.2d 499 (Okl.Cr.1974); Canfield v. State, 506 P.2d 987 (Okl.Cr.1973), appeal dismissed, 414 U.S. 991, 94 S.Ct. 342, 38 L.Ed.2d 230 (1973), rehearing denied, 414 U.S. 1138, 94 S.Ct. 884, 38 L.Ed.2d 763 (1973); Moore v. State, 501 P.2d 529 (Okl.Cr.1972), cert. denied, 410 U.S. 987, 93 S.Ct. 1517, 36 L.Ed.2d 185 (1972). Oklahoma has clearly announced that the offense of sodomy is not to be countenanced within its borders. Federal courts should not function as superlegislatures in order to judge the wisdom or desirability of legislative policy determinations in areas that neither affect fundamental rights nor proceed along suspect lines. City of New Orleans v. Dukes, 427 U.S. 297, 303, 96 S.Ct. 2513, 2516, 49 L.Ed.2d 511 (1976).
 
 
 33
 In Wainwright v. Stone, 414 U.S. 21, 94 S.Ct. 190, 38 L.Ed.2d 179 (1973), the Supreme Court upheld a Florida statute which proscribed "the abominable and detestable crime against nature, either with mankind or with beast" against a constitutional challenge of void for vagueness. The Fifth Circuit had held the statute infirm as unconstitutionally vague and void on its face for failure to give adequate notice of the conduct forbidden by law. In reversing, the Supreme Court observed that copulation per os and per anum had long been held by Florida courts violative of the challenged statute as the "abominable and detestable" crimes against nature referred to in the statute. Hence, the Supreme Court found that the statute was subject to a narrowing construction.
 
 
 34
 The majority, unlike the district court, holds that portion of the statute which allows "punishment" for teachers for advocating "public homosexual conduct" to be overbroad because it is "not readily subject to a narrowing construction by the state courts" and "its deterrent effect on legitimate expression is both real and substantial." I disagree. Sodomy is malum in se, i.e., immoral and corruptible in its nature without regard to the fact of its being noticed or punished by the law of the state. It is not malum prohibitum, i.e., wrong only because it is forbidden by law and not involving moral turpitude. It is on this principle that I must part with the majority's holding that the "public homosexual conduct" portion of the Oklahoma statute is overbroad.
 
 
 35
 Any teacher who advocates, solicits, encourages or promotes the practice of sodomy "in a manner that creates a substantial risk that such conduct will come to the attention of school children or school employees" is in fact and in truth inciting school children to participate in the abominable and detestable crime against nature. Such advocacy by school teachers, regardless of the situs where made, creates a substantial risk of being conveyed to school children. In my view, it does not merit any constitutional protection. There is no need to demonstrate that such conduct would bring about a material or substantial interference or disruption in the normal activities of the school. A teacher advocating the practice of sodomy to school children is without First Amendment protection. This statute furthers an important and substantial government interest, as determined by the Oklahoma legislature, unrelated to the suppression of free speech. The incidental restriction on alleged First Amendment freedom is no greater than is essential to the furtherance of that interest.
 
 
 36
 Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969) is a poor vehicle for the majority to rely upon. There, the Supreme Court simply held that school children opposed to the Vietnam conflict were protected under the First Amendment in their practice of wearing black arm bands in protest thereto, unless that conduct could be shown to substantially interfere or disrupt normal school activities. Tinker involved a symbolic demonstration involving a matter of national political significance. Political expression and association is at the very heart of the First Amendment. The advocacy of a practice as universally condemned as the crime of sodomy hardly qualifies as such. There is no need to establish that such advocacy will interfere, substantially or otherwise, in normal school activities. It is sufficient that such advocacy is advanced in a manner that creates a substantial risk that such conduct will encourage school children to commit the abominable crime against nature. This finds solid support in Tinker, supra, where the Court said "First Amendment rights must always be applied 'in light of the special characteristics of the ... environment' in the particular case." 393 U.S. 503, 506, 89 S.Ct. 733, 736.
 
 
 37
 The Oklahoma legislature has declared that the advocacy by teachers of homosexual acts to school children is a matter of statewide concern. The Oklahoma statute does not condemn or in anywise affect teachers, homosexual or otherwise, except to the extent of the non-advocacy restraint aimed at the protection of school children. It does not deny them any rights as human beings. To equate such "restraint" on First Amendment speech with the Tinker armband display and to require proof that advocacy of the act of sodomy will substantially interfere or disrupt normal school activities is a bow to permissiveness. To the same extent, the advocacy of violence, sabotage and terrorism as a means of effecting political reform held in Brandenburg v. Ohio, 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969) to be protected speech unless demonstrated as directed to and likely to incite or produce such action did not involve advocacy of a crime malum in se to school children by a school teacher.
 
 
 38
 Facial overbreadth challenges are "manifestly strong medicine" which must be employed "sparingly and only as a last resort." Broadrick v. Oklahoma, 413 U.S. 601, 613, 93 S.Ct. 2908, 2916, 37 L.Ed.2d 830 (1973). When a party asserts such a challenge, the overbreadth "must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." Id. at 615, 93 S.Ct. at 2917. A statute's "plainly legitimate sweep" usually includes "controls over harmful, constitutionally unprotected conduct." Id. A broadly-worded statute which does deter some protected speech or conduct may not require invalidation if that deterrence can, with confidence, justify such action. Id.
 
 
 39
 In Keyishian v. Board of Regents, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967), the Supreme Court set down its initial guidelines for determining when deterrence of speech or conduct does or does not justify invalidation of a statute. The Court held that a statute is overbroad if it proscribes speech or conduct which "merely advocates the doctrine in the abstract without any attempt to indoctrinate others, or incite others to action in furtherance of unlawful aims." Id. at 599-600, 87 S.Ct. at 681-682. The Court drew a distinction between speech or conduct advocating an abstract doctrine or belief, which demands constitutional protection, and advocacy of unlawful action or acts, with the intent to incite, which deserves no such protection. See also Communist Party of Indiana v. Whitcomb, 414 U.S. 441, 444, 94 S.Ct. 656, 659, 38 L.Ed.2d 635 (1974); Brandenburg v. Ohio, supra; Yates v. United States, 354 U.S. 298, 318-27, 77 S.Ct. 1064, 1076-1081, 1 L.Ed.2d 1356 (1956). I submit that in the context of the Oklahoma public school system, the advocacy of sodomy by a teacher in a manner "that creates a substantial risk" it will come to the attention of school children deserves no First Amendment protection.
 
 
 40
 There is nothing abstract about a teacher advocating to school children the commission of the criminal act proscribed by section 886, supra. The expression proscribed by Sec. 6-103.15 is the advocacy of the commission of the very act held to be a criminal act in Canfield. Thus, the deterred speech or conduct concerns "advocating," "promoting" and "encouraging" school children to commit the crime of sodomy. In the context of the public school system involving the teacher-student relationship, it cannot be said that the advocacy of such action is mere advocacy of an abstract doctrine or belief. See Keyishian, supra 385 U.S. at 599-600, 87 S.Ct. at 681-682. To hold otherwise ignores the difference between children and adults.
 
 
 41
 I would affirm.
 
 
 
 [1]
 Section 886 provides: "Every person who is guilty of the detestable and abominable crime against nature, committed with mankind or with a beast, is punishable by imprisonment in the penitentiary not exceeding ten (10) years." The Oklahoma Court of Criminal Appeals has held that Sec. 886 proscribes oral and anal copulation. Berryman v. State, 283 P.2d 558, 563 (Okl.Cr.App.1955). In Wainwright v. Stone, 414 U.S. 21, 94 S.Ct. 190, 38 L.Ed.2d 179 (1973), the Court held that an almost identical Florida statute was not unconstitutionally vague because the Florida courts had specified that the statute applied to oral and anal copulation
 "When a state statute has been construed to forbid identifiable conduct so that 'interpretation by [the state court] puts these words in the statute as definitely as if it had been so amended by the legislature,' claims of impermissible vagueness must be judged in that light."
 414 U.S. at 23, 94 S.Ct. at 192, citing Winters v. New York, 333 U.S. 507, 514, 68 S.Ct. 665, 666, 92 L.Ed. 840 (1948).