**Julise M. JOHNSON, Plaintiff,**

**v.**

**Verne ORR, et al., Defendants.**

**Civ. No. S–84–1257 EJG.**

United States District Court,
E.D. California.

March 14, 1985.

---

Donna Hitchens, American Civil Liberties Union, Roberta Achtenberg, Lesbian Rights Project, San Francisco, Cal., for plaintiff.

Talmadge R. Jones, Deputy Atty. Gen., Sacramento, Cal., for California Air National Guard.

Donald B. Ayer, U.S. Atty. by Gregory G. Hollows, Asst. U.S. Atty., Sacramento, Cal., for U.S. Air Force Reserve.

## MEMORANDUM OF DECISION

EDWARD J. GARCIA, District Judge.

This action came on for hearing on November 7, 1984, on plaintiff's motion for a preliminary injunction. Plaintiff's motion seeks an order requiring the United States Air Force Reserve and the California Air National Guard to reinstate her as an officer pending the final disposition of this lawsuit. Plaintiff was discharged pursuant to Regulation 36–014, ¶ 8.a.(9) of the Air National Guard Regulations which mandates the separation of homosexuals as unfit for military service. Plaintiff was discovered by defendants to be a homosexual through a letter that she wrote to her commanding officer in which she so identified herself. Plaintiff challenges her discharge as an unconstitutional abridgment of her right to free speech under the First Amendment to the United States Constitution. Alternatively, plaintiff challenges her discharge from the California Air National Guard as violative of Article I, Section 8, Clause 16 of the United States Constitution which, plaintiff maintains, precludes federal defendants from mandating the involuntary discharge of an officer in the California Guard.

The parties do not dispute the facts leading up to the plaintiff's discharge. Plaintiff was commissioned as an officer in the California Air National Guard on September 2, 1981. On that same date she was "federally recognized" and appointed as an officer in the United States Air Force Reserve with assignment to the United States Air National Guard. She served until August 15, 1984 when she was honorably discharged at the rank of First Lieutenant. Plaintiff has documented that throughout her service in both the Air Force and the National Guard, she received excellent performance evaluations. Defendants do not dispute plaintiff's excellent service record, but instead base the discharge action on plaintiff's admitted homosexuality.

On June 24, 1983, plaintiff sent the following letter to her commanding officer:

Dear Col. Henderson

As you know, I have been a commissioned officer in the California Air National Guard since September 2, 1981. I have enjoyed my service in the Guard and, as my record reflects, I have served the Guard well in my position as administrative officer of the 234th CMBTCS. I am writing this letter as information for the record and to prevent any problems from arising in the future.

I am a lesbian and that will remain my political and sexual preference. However, my homosexuality does not in any way conflict with my ability to perform my military duties. I do not and will not advocate homosexuality to anyone while on military duty. I will continue to carry out my assignments and fulfill my commitments to the California Air National Guard.

Thank you for the opportunity to address this issue and "clear the air." Please retain this letter in my permanent file.

Sincerely,

Julise M. Johnson

On July 5, 1983, plaintiff was notified that an administrative discharge was being initiated pursuant to Regulation 36–014.

An administrative board of officers (an efficiency board) was convened by the Air Force on December 20, 1983 to determine whether the plaintiff should be discharged. Following a hearing on the matter, the Board reached the following findings and recommendations:

The Board finds:

1) no conclusive proof of homosexual activity by the respondent; 2) that the respondent stated she was a homosexual. The Board determines that the respondent should not be retained in the Air National Guard of the United States nor as a reserve of the Air Force. The Board recommends that the respondent be awarded an honorable discharge. You will be given a copy of the transcript of the proceedings of this Board, less such documents previously furnished you in connection with these proceedings.

Plaintiff was honorably discharged on August 15, 1984. Plaintiff now moves for a preliminary injunction requiring the defendants to reinstate her.

■ The tenor for review in this case was ably described in *ben Shalom v. Secretary of Army,* 489 F.Supp. 964, 971 (E.D. Wisc.1980) as follows:

The courts are extremely reluctant to interfere with the military's exercise of direction over its internal affairs. This is particularly so when the military makes personnel changes, pursuant to its regulations, through its promotion or discharge processes. *Dilley v. Alexander,* 603 F.2d 914, 919–20 (D.C.Cir.1979); *Pauls v. Secretary of Air Force,* 457 F.2d 294 (1 Cir.1972).

Restricted judicial review is not, however, the equivalent of no judicial review. Courts will review, without hesitation, cases in which it is alleged that the military violated the Constitution, applicable statutes, or its own regulations. *Dilley v. Alexander, supra,* at 920; *Harmon v. Brucker, supra,* 355 U.S. [579] at 579, 78 S.Ct. [433] at 433 [2 L.Ed.2d 503 (1958)]; *Mindes v. Seaman, supra* [453 F.2d 197, 199 (5th Cir.1971)].

"It is established, of course, that the federal courts have the power and the duty to inquire whether a military discharge was properly issued under the Constitution, statutes, and regulations." *Matlovich v. Secretary of Air Force, supra,* at 859 [591 F.2d 852, 859 (D.C.Cir.1978)]; *Sanders v. United States, supra,* at 814 [594 F.2d 804, 813 (Ct.Cl.1979)]; *Hodges v. Callaway, supra* [499 F.2d 417 (5th Cir. 1974)].

It is in that context that this court proceeds to review plaintiff's discharge for the purpose of the instant request for a preliminary injunction.

■ In order for plaintiff to prevail on her motion she must meet the requirements established by the Ninth Circuit for issuance of a preliminary injunction. "The moving party meets its burden by demonstrating either a combination of probable success on the merits and the possibility of irreparable injury or that serious questions have been raised and the balance of hardships tips sharply in its favor." *Lopez v. Heckler,* 725 F.2d 1489, 1498 (9th Cir.1984); *Sports Form, Inc. v. United Press International, Inc.,* 686 F.2d 750, 753 (9th Cir. 1982); *Beltrans v. Meyers,* 677 F.2d 1317, 1320 (9th Cir.1982); *Los Angeles Memorial Coliseum Commission v. National Football League,* 634 F.2d 1197, 1201 (9th Cir. 1980). Plaintiff fails to meet her burden under either test.

■ Plaintiff has not shown a probability of success on the merits. Rather, the free speech issue raised in this case appears to be specious. Plaintiff contends that her involuntary discharge was solely the result of the fact that she informed her group commander that she considered herself to be a lesbian. Because there was never any allegation that plaintiff engaged in homosexual activity or that her performance as an officer has ever been inadequate, plaintiff contends that her discharge was based on her assertion of a personal identity. Accordingly, plaintiff characterizes her termination as a violation of her rights to free speech and freedom of asso-

ciation as guaranteed by the First Amendment of the Constitution of the United States. However, this court views plaintiff's self-assertion of her homosexuality as nothing more than an admission of a fact, and such fact may serve as a lawful basis for discharge, *see, Beller v. Middendorf,* 632 F.2d 788 (9th Cir.1980), and *Watkins v. U.S. Army,* 721 F.2d 687 (9th Cir.1983).[1] The Ninth Circuit in *Beller* upheld the Navy's right to discharge three individuals on the basis of their admissions to homosexual activity. In *Watkins,* the Ninth Circuit rejected the assertion of an estoppel theory (based on length of exemplary performance and actual knowledge by the Army of the plaintiff's sexual preference) to bar the Army's application of regulations that prohibit reenlistment of homosexuals. The plaintiff in *Watkins* was not allowed to reenlist solely because he was an admitted homosexual. Although the *Watkins* court did not have before it the specific issue of the regulations' constitutionality, the court noted that such issue appeared to have been resolved in *Beller v. Middendorf, supra.*[2]

Plaintiff's First Amendment argument draws a distinction between homosexual activity and statements of homosexual preference. She refers to the findings of the Efficiency Board which specify that there was no conclusive proof of homosexual activity and, instead, relied upon plaintiff's statement that she was a homosexual. Plaintiff then turns to the pertinent language of Regulation 36–014 which was used to support her discharge. The relevant subsections are 8.a(9)(a) and (b) which provide as follows:

(9) Homosexuality.

(a) Homosexuality is incompatible with military service. The presence in the military environment of persons who engage in homosexual conduct or who, by their statements, demonstrate a propensity to engage in homosexual conduct, seriously impairs the accomplishment of the military mission. The presence of such members adversely affects the ability of the armed forces to maintain discipline, good order, and morale; to foster mutual trust and confidence among service members; to ensure the integrity of the system of rank and command; to facilitate assignment and worldwide deployment of service members who frequently must live and work under close conditions affording minimal privacy; to recruit members of the armed forces; to maintain the public acceptability of military service; and to prevent breaches of security.

1. *See also, Rich v. Secretary of the Army,* 735 F.2d 1220 (10th Cir.1984), which held that the Army's policy of excluding homosexuals did not violate either the equal protection or due process guarantees of the Fifth Amendment. *Rich* also rejected a First Amendment challenge to the policy stating "... plaintiff was not discharged for advocating homosexuality or merely associating with homosexuals. Rather the Army discharged him because during enlistment he falsely denied having engaged in homosexual activity." *Rich, supra* at 1229. The court found any effect by the policy on First Amendment rights to be only incidental and outweighed by the special needs of the military and "[t]he fundamental necessity for obedience, and the consequent necessity for imposition of discipline, [which] would be constitutionally impermissible outside it. *Parker v. Levy,* 417 U.S. 733, 758, 94 S.Ct. 2547, 2563 [41 L.Ed.2d 439] (1974) ... But cf. *Matthews v. Marsh,* No. 82–0216 (D.Me. April 3, 1984) (where no homosexual activity is shown, excluding person from R.O.T.C. program because she stated she was a ho-

mosexual violated First Amendment) appeal docketed, No. 84–1482 (1st Cir. June 15, 1984)." *Rich, supra* at 1229.

2. The Ninth Circuit in Watkins noted that "A court, however, is justified in using its power to compel military personnel to disobey regulations which the court has determined are repugnant to the Constitution or to statutory authority. *See Frontiero v. Richardson,* 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973); *cf. Harmon v. Brucker,* 355 U.S. 579, 78 S.Ct. 433, 2 L.Ed.2d 503 (1958) (per curiam) (holding that a court may review a decision of the Secretary of the Army to determine whether he acted in excess of his statutory authority). That is not the case here. Although Watkins' complaint included claims that the Army regulations in question are repugnant to the Constitution, the district court declined to rule on any constitutional question. Moreover, we note that this court has upheld similar regulations in *Beller v. Middendorf,* 632 F.2d 788 (9th Cir.1980), *cert. denied,* 452 U.S. 905, 101 S.Ct. 3030, 69 L.Ed.2d 405 (1981).

(b) The basis of separation may include preserve, prior service, or current service conduct or statements. A member will be separated if one or more of the following approved findings is made:

. . . .

2. The member has stated that he or she is a homosexual or bisexual unless there is a further finding that the member is not a homosexual or bisexual.

Plaintiff correctly points out that subsection 9(b)(2) mandates the discharge of any individual who states that he or she is either homosexual or bisexual. As such, plaintiff argues that the subsection regulates pure speech and is therefore facially unconstitutional. Plaintiff relies on the holding of the Tenth Circuit in *National Gay Task Force v. Board of Education of The City of Oklahoma*, 729 F.2d 1270 (10th Cir.1984) *prob. juris. noted*, —— U.S. ——, 105 S.Ct. 76, 83 L.Ed.2d 24 (1984), which invalidated a state statute that provided for the dismissal of any teacher who engaged in homosexual conduct but yet defined such conduct to include "advocating ... encouraging or promoting public or private homosexual activity ..." Plaintiff cites the following passage of *National Gay Task Force*:

The First Amendment protects 'advocacy' even of illegal conduct except when 'advocacy' is 'directed to inciting or producing imminent lawless action and is likely to incite or produce such action.' *Brandenburg v. Ohio*, 395 U.S. 444, 447, 89 S.Ct. 1827, 1829, 23 L.Ed.2d 430 (1969). The First Amendment does not permit someone to be punished for advocating illegal conduct at some indefinite future time. *Hess v. Indiana*, 414 U.S. 105, 109, 94 S.Ct. 326, 329, 38 L.Ed.2d 303 (1973).

'Encouraging' and 'promoting,' like 'advocating,' do not necessarily imply incitement to imminent action. A teacher who went before the Oklahoma legislature or appeared on television to urge the repeal of the Oklahoma anti-sodomy statute would be 'advocating,' 'promoting,' and 'encouraging' homosexual sodomy and creating a substantial risk that his or her speech would come to the attention of school children or school employees if he or she said, 'I think it is psychologically damaging for people with homosexual desires to suppress those desires. They should act on those desires and should be legally free to do so.' Such statements, which are aimed at legal and social change, are at the core of First Amendment protections. As in *Erznoznik [v. City of Jacksonville*, 422 U.S. 205, 95 S.Ct. 2268, 45 L.Ed.2d 125 (1975)] the statute by its plain terms is not easily susceptible of a narrowing construction. The Oklahoma legislature chose the word 'advocacy' despite the Supreme Court's interpretation of the word in *Brandenberg*. Finally, the deterrant effect of [the statute] is both real and substantial. It applies to all teachers, substitute teachers, and teachers aides in Oklahoma. To protect their jobs they must restrict their expression. *See Erznoznik*, 422 U.S. at 217, 95 S.Ct. at 2276. Thus, the [statute's] proscription of advocating, encouraging, or promoting homosexual activity is unconstitutionally overbroad.

*National Gay Task Force v. Board of Education of the City of Oklahoma, supra* 729 F.2d at 1274.

Plaintiff then argues that the restrictions imposed in the present case are even more sweeping than those prohibited by the Oklahoma statute invalidated in *National Gay Task Force*. She argues that she was terminated merely for making a statement about who she considers herself to be. However, plaintiff's latter argument shows why the purported First Amendment issues of this case are specious. The statute invalidated in *National Gay Task Force* clearly involved advocacy. As plaintiff correctly points out her discharge was based on her statement (i.e. admission) that she considers herself to be a lesbian. She did not "advocate, encourage or promote anything." Instead, she made an admission. Having made that admission, the regulation in question provides for her discharge.

The letter or statement which plaintiff relies on simply serves as evidence of an admitted fact which formed the basis of her involuntary discharge. Her admission is apparently now being asserted to create a First Amendment "exclusionary rule" to bar the use of her statements as evidence of her homosexuality, a rule that this court is not prepared to create. Plaintiff's discharge was not based on her advocacy of ideas, actions or conduct but rather, was based solely on her admission of a fact.

Furthermore, even if the content of plaintiff's speech was being censored by the regulation, plaintiff fails to show a likelihood of success on the merits or even a serious question as to the issue of whether such speech is protected in light of the Supreme Court's ruling in *Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). The court in *Connick* considered the question of First Amendment protection for statements by public employees. The court determined that certain written statements by an Assistant District Attorney were addressed to a private dispute between herself and the District Attorney and therefore not protected speech. The court considered the "speech" in question to concern matters only of personal interest and not of public concern and therefore beyond the protection of the First Amendment. The court noted that public employees do not relinquish First Amendment Rights to comment on matters of public interest by virtue of their government employment, and reemphasized the Constitution's special concern with threats to the right of citizens to participate in political affairs and explained those concerns as follows:

The First Amendment "was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people." *Roth v. United States*, 354 U.S. 476, 484, 77 S.Ct. 1304, 1308, 1 L.Ed.2d 1498 [1957]; *New York Times Co. v. Sullivan*, 376 U.S. 254, 269, 84 S.Ct. 710, 720, 11 L.Ed.2d 686 (1964). '[S]peech concerning public affairs is more than self-expression; it is the essence of self-

government.' *Garrison v. Louisiana*, 379 U.S. 64, 74–75, 85 S.Ct. 209, 215–16, 13 L.Ed.2d 125 (1964). Accordingly, the Court has frequently reaffirmed that speech on public issues occupies the 'highest rung of the heirarchy of First Amendment values,' and is entitled to special protection. *NAACP v. Claiborne Hardware Co.*, [458] U.S. [886], [913–15], 102 S.Ct. 3409, 3426, 73 L.Ed.2d 1215 (1982); *Carey v. Brown*, 447 U.S. 455, 467, 100 S.Ct. 2286, 2293, 65 L.Ed.2d 263 (1980).

*Connick v. Meyers, supra* at 1689. The court continued its analysis by noting its holding in *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) that the First Amendment precludes the dismissal of a public employee (a high school teacher) for openly criticizing the the policies of the School Board. However, the court pointed out that crucial to the decision in *Pickering* was a subject matter of "legitimate public concern." The court in *Connick* held that *"Pickering*, its antecedents and progeny, lead us to conclude that if Myers' questionnaire cannot be fairly characterized as constituting speech on a matter of public concern, it is unnecessary for us to scrutinize the reasons for her discharge. When employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment." *Connick v. Meyers, supra,* 103 S.Ct. at 1689–90. The court was careful to qualify its holding so as not to suggest that matters not touching upon public concern are totally beyond the protection of the First Amendment. Rather, the court stated that "we hold only that when a public employees speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a person-

nel decision taken by a public agency allegedly in reaction to the employee's behavior."

This issue of private expression was also considered in *Rowland v. Mad River Local School Dist., Montgomery County, Ohio,* 730 F.2d 444 (6th Cir.1984), *cert. denied,* — U.S. ——, 105 S.Ct. 1373, 84 L.Ed.2d 392 (1985) in the context of a high school guidance counselor who was fired after telling other employees of her bisexual preference. The Sixth Circuit examined the facts of the case and determined that, in light of *Connick, supra,* the counselor's First Amendment right to freedom of speech was not violated. In applying the *Connick* test the court emphasized that the counselor's disclosures were made in the context of confidential discussions. She requested that revelations be kept confidential. The court therefore found that "Ms. Rowland's own treatment of the issue of her sexual preference indicates that she recognized that the matter was not one of public concern. Her statements, like those of the plaintiff in *Connick,* were made as part of an individual effort to avoid unfavorable action by her employer." *Rowland, supra* at 449.

The court finds in this case that plaintiff Johnson's letter to her commanding officer was a communication by an employee upon a matter personal to herself and was not a communication or advocacy of a citizen upon matters of public concern. Plaintiff's letter was particularized to herself, described her own homosexuality and stated that such sexual preference did not interfere with the performance of her duties. The letter did not seek to inform the public in general or to advocate public policy changes. Rather, the letter specifically stated "I do not and will not advocate homosexuality to anyone while on military duty." As such, the letter appears to fall under the Supreme Court's ruling in *Connick,* and may not be used as a basis for a First Amendment barrier to the discharge of the plaintiff for her admitted homosexuality.

In support of her argument that the letter constitutes "speech" on a matter of public concern, plaintiff relies on the two district court decisions of *ben Shalom v. Secretary of Army, supra,* and *Matthews v. Marsh, Jr.,* Civ. No. 82–0216P (Me.1984). In both cases, discharges under substantially similar regulations were found to be unconstitutional. In *ben Shalom,* the court found the interests of the Army to be substantially outweighed by the chill imposed by the regulation on the First Amendment liberties of soldiers. The court in *Matthews* found "content discrimination" by a regulation that "eliminates entirely a particular subject of expression from the vocabulary of service persons because of the Army's concerns that others will react negatively." The *Matthews* decision found some difficulty fitting the plaintiff's lesbian admission into either the category of "a citizen speaking upon matters of public concern" (*Pickering*) or "an employee speaking upon matters of only personal interest" (*Connick*). The court noted that such self-identification was undoubtedly a matter of significant "personal interest" but further noted that the issue of discrimination against homosexuals in employment, especially in the military, is a matter of intense public debate. The court found the admission in *Matthews* not to be directed to the plaintiff's employment situation and therefore sufficient to surmount "the *Connick* hurdle to judicial evaluation of the balance struck between citizen and governmental interests."

The court has considered the reasoning applied in *Matthews* but is not able to apply that analysis to this case. Here plaintiff Johnson wrote a letter that related specifically to her employment situation and ruled out advocacy as her intent. This court fully agrees with the observation in *Matthews* that discrimination against homosexuals in employment is a matter of intense public debate and especially with respect to the military. Furthermore, had plaintiff Johnson made a speech espousing "or denouncing" either side of the debate it would certainly appear that her comments would be protected by the First Amend-

ment. However, plaintiff Johnson did not make such a speech.

In *ben Shalom v. Secretary of the Army, supra,* a district court invalidated, on First Amendment grounds, a prior version of the Army's regulation on homosexuality as infringing on the right "to meet with homosexuals and discuss current problems or advocate changes in the status quo or to receive information and ideas about homosexuality." *ben Shalom, supra* 489 F.Supp. at 974. However, for the reasons stated above, this court is also unable to apply the analysis of the *ben Shalom* decision to plaintiff Johnson's case.

### *Plaintiff's Article I, Section 8 Argument*

■ In addition to her First Amendment arguments, plaintiff contends that Article I, Section 8, Clause 16 of the United States Constitution precludes the federal defendants from mandating the involuntary discharge of an officer in the California Guard. This Section defines the respective powers reserved to the federal government and those delegated to the states with respect to organizing the militia. The specific Clause in question vests in the federal government the power:

> to provide for organizing, arming, and disciplining, the militia, and for governing such part of them as may be employed in the service of the United States, reserving to the states respectively, the appointment of the officers, and the authority of training the militia according to the discipline proscribed by Congress.

Plaintiff asserts, apparently correctly, that the National Guard is no more than a modern-day militia and therefore Clause 16 makes it clear that only the states have authority to appoint officers. Plaintiff goes on to argue that only the states have the authority to terminate from service an officer of the National Guard. Otherwise, it is contended, the reservation of Clause 16 would be meaningless. Plaintiff's argument continues that as a member of the

National Guard, she is an employee of the State of California, relying on *Maryland v. United States,* 381 U.S. 41, 85 S.Ct. 1293, 14 L.Ed.2d 205 (1965). Plaintiff then proceeds to evaluate her involuntary discharge in light of the laws of the State of California.

Assuming plaintiff's statement of California law to be correct, this court is still unable to find that plaintiff has shown either a likelihood of success on the merits or that serious questions have been raised as to the application of California law to her discharge from the California Air National Guard.

Article I, Section 8, Clause 16 of the United States Constitution very clearly reserves to the states the power to appoint officers. However, at issue in this case is not the appointment of an officer to the California Air National Guard. Rather, what is at issue is the involuntary discharge of an officer who has admitted a certain fact which under the regulations in question require her discharge. Therefore, what appears to be in issue is the authority to discipline a member of the militia. Clause 16 specifically vests in the federal government the power "to provide for organizing, arming, and disciplining, the militia ..." and reserves to the state only "the appointment of the officers, and the authority of training the militia *according to the discipline proscribed by Congress.*" (emphasis added). Therefore, Article I, Section 8, Clause 16 of the Constitution does not prevent the application of federal regulations to the plaintiff's status as an officer of the California Air National Guard.

### *Balance of Hardships and Irreparable Harm*

The Supreme Court has held that "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitute irreparable injury." *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). Under such a per se rule concerning irreparable injury, plaintiff clearly would be entitled to a preliminary injunction had she been able to show a

likelihood of success on the merits, or at least that serious questions have been raised.[3] However, plaintiff has failed to show "a loss of First Amendment freedoms, for even minimal periods of time." As previously discussed, this court is unable to find an abridgment of the plaintiff's First Amendment Freedoms. The text of her letter to her commanding officer admits a fact. Plaintiff is a lesbian. Because of that admission, the letter was used as evidence to support her involuntary discharge pursuant to the regulations excluding homosexuals from military service. The letter addresses facts private in nature and does not purport to advocate anything of a public nature. As such, it does no more than establish clearly and uncategorically that plaintiff is a homosexual. Accordingly, the letter fails to overcome the rule in *Connick v. Myers supra.*

Plaintiff has failed to show probable success on the merits of her lawsuit or that serious questions have been raised as to either her First Amendment free speech arguments or her Article I, Section 8 arguments. Accordingly, her motion for a preliminary injunction must be and is hereby DENIED.

IT IS SO ORDERED.

**3.** If plaintiff were successful in only raising serious questions, but could not show a likelihood of success on the merits of her lawsuit, she would also have to show that the First Amendment interests in question sharply outweigh the interests of the military in applying its regulations regarding discharge of homosexuals to her.