**Sergeant Perry WATKINS,
Plaintiff-Appellee,**

v.

**UNITED STATES ARMY, et al.,
Defendants-Appellants.**

No. 82–3681.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 12, 1983.
Decided Dec. 9, 1983.

Alfred R. Mollin, Washington, D.C., for defendants-appellants.

James E. Lobsenz, Seattle, Wash., for plaintiff-appellee.

Before CHOY and NORRIS, Circuit Judges, and CURTIS,* District Judge.

CHOY, Circuit Judge:

In this action for declaratory and injunctive relief, a serviceman with an exemplary performance record was not allowed to reenlist solely because he is an admitted homosexual. It is clear that the Army knew of Watkins' sexual preference very early in his fourteen years with the service. However, in 1981 the Army promulgated new regulations requiring the discharge of any homosexual soldier notwithstanding the soldier's performance record or character of service. The district court held that the Army was estopped from using those regulations as a bar to Watkins' reenlistment, and enjoined the Army from refusing to reenlist Watkins on that ground. The Army has appealed under 28 U.S.C. § 1292(a)(1).

It is not our function to question the wisdom of those who changed Army regulations from those merely authorizing separation for homosexuality to regulations that mandate discharge. Absent a determination that the regulations cannot be given legal effect, however, the district court has no power to force Watkins' superiors to disobey them. We therefore reverse and remand.

## I. STATEMENT OF FACTS

As the facts of this case are more fully set forth in the reported opinion of the district court, 551 F.Supp. 212 (W.D.Wash. 1982), and in the district court's opinion in a previous stage of this case, 541 F.Supp. 249 (W.D.Wash.1982), they will only be summarized here.

Since Watkins' induction in August 1967, he has admitted to the Army that he is a homosexual. When he underwent his preinduction physical examination in 1967, he checked a box on his medical history report indicating that he then had homosexual tendencies or had previously experienced such tendencies. A staff psychiatrist evaluated him and found him qualified for admission. In November 1968, the Criminal Investigation Division (CID) investigated Watkins for committing sodomy, but dropped the charges for lack of sufficient evidence. Watkins received an honorable discharge on May 8, 1970 at the conclusion of his tour of duty.

One year later, Watkins reenlisted. He was denied a security clearance in 1972

* The Honorable Jesse W. Curtis, Senior United States District Judge for the Central District of California, sitting by designation.

because of his homosexuality, and he was investigated again by CID. Later that year, he performed a female impersonation act before the troops with the express permission of his unit commander.

In 1974, Watkins reenlisted for six years. In October 1975 his commander convened a board of consideration against him to determine if he was unsuitable for duty due to homosexuality. The board concluded that Watkins was homosexual but recommended his retention because of his excellent service record. In 1977, Watkins was granted a security clearance by his commander and applied for a position in a program that required applicants to have security clearance and to pass a background check. Watkins was initially declared ineligible because of his homosexual tendencies, but was subsequently accepted into the program at the insistence of his commanding officer.

Watkins reenlisted for a three year term in 1979. After an investigation by military intelligence, the Army's Personnel Clearance Facility revoked Watkins' clearance because he had stated in 1979 that he had been a homosexual for the past 15 to 20 years. The Army then initiated proceedings to discharge Watkins on the ground of homosexuality. Watkins filed suit in 1981 seeking an injunction against his discharge and reinstatement of his security clearance. After litigation involving his discharge, Watkins' tour of duty expired. Watkins then successfully applied to the district court for an injunction forbidding the Army to deny his reenlistment on the ground of homosexuality. The Army reenlisted Watkins for a six year term on November 1, 1982, with the proviso that the reenlistment would be voided if the district court's injunction were not upheld.

## II. HISTORY OF THE ARMY'S REGULATIONS ON HOMOSEXUALITY

Under 10 U.S.C. § 1169, no enlisted person may be discharged prior to the expiration of his or her term except pursuant to law or the sentence of a court-martial, or as prescribed by the Secretary of the Army. Pursuant to that authority, the Army has promulgated regulations regarding separation of enlisted personnel. Army Reg. 635–200.

Prior to 1981, it was clear that homosexuality was regarded as a possible disqualification for military service. For example, under 1977 regulations homosexuality was regarded as "misconduct," Army Reg. 635–200, ¶ 14–33(a)(3) (Nov. 21, 1977), but the board convened to determine whether the enlisted individual should be discharged had the discretion to recommend retention. *Id.* ¶ 1–24(a)(3); *see also id.* ¶ 13–23(b)(2) (July 15, 1966).

On March 10, 1981, however, the Headquarters, Department of the Army (HQDA) issued a document known as Interim Change No. IO5. That document promulgated a new Chapter 15 to Army Reg. 635–200 which exclusively addressed separation for homosexuality. In addition, it rescinded the provisions on homosexuality in Chapters 13 and 14 (separations for unsuitability or misconduct) and inserted a provision saying that retention of an enlisted homosexual would be decided using standards in the new Chapter 15, which, as it turned out, were not discretionary.

The language of Chapter 15 is stark. Retention of an admitted homosexual is not permitted absent an express finding that the soldier in question is in fact not homosexual. Army Reg. 635–200, ¶ 15–3(b) (Oct. 1, 1982). Moreover, retention of a soldier who attempted, solicited, or committed a homosexual act is not allowed unless there are specific findings to the effect that the act was an isolated incident which is unlikely to recur, that the enlisted person does not desire or intend to engage in homosexual acts, *and* that the soldier's continued presence in the Army is consistent with the interest of the military. *Id.* ¶ 15–3(a).

Despite its direct language, the new Chapter 15 generated some confusion. Boards of officers were recommending the retention of enlisted personnel who, but for their homosexuality, were exemplary soldiers. HQDA, concluding that this practice was at variance with the new policy, issued a release saying that the intent of the new

policy was to permit retention only of non-homosexual soldiers. *See* Message No. 161400Z, ¶¶ 4–5 (HQDA June 1982). HQDA thus made clear that the Army's new policy immediately disqualifies any homosexual from continued military service irrespective of the character of the soldier's past service.

## III. DISCUSSION

The Army urges that the decision of the Army not to retain Watkins is unreviewable in a civilian court. Watkins counters by saying that this court has established standards relating to judicial review of military personnel action in *Wallace v. Chappell,* 661 F.2d 729 (9th Cir.1981), *rev'd,* —— U.S. ——, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983), and that those standards were met here.

At the outset, we note that the courts of appeals have long held that review is available where military officials have violated their own regulations. *Denton v. Secretary of the Air Force,* 483 F.2d 21, 24–25 (9th Cir.1973), *cert. denied,* 414 U.S. 1146, 94 S.Ct. 900, 39 L.Ed.2d 102 (1974); see also authorities cited in *Mindes v. Seaman,* 453 F.2d 197, 200 (5th Cir.1971). In this case, however, the district court in effect ordered military officials to violate their own regulations through the use of, as the district court termed it, "the equity powers of this court." 551 F.Supp. at 218.

The Supreme Court has recognized that the broad powers the courts possess to regulate civilian life are to a large extent inapplicable to the military. Simply put, military and civilian life are regulated by two separate systems of justice, to some extent parallel but nevertheless distinct. *Chappell v. Wallace,* —— U.S. ——, 103 S.Ct. 2362, 2367, 76 L.Ed.2d 586 (1983); *Orloff v. Willoughby,* 345 U.S. 83, 94, 73 S.Ct. 534, 540, 97 L.Ed. 842 (1953). Encroachment of civilian court power into military life must necessarily be limited, for "judges are not given the task of running the Army," *Orloff,* 345 U.S. at 93, 73 S.Ct. at 540, *quoted in Chappell,* 103 S.Ct. at 2366, and "courts are ill-equipped to determine the impact upon discipline that any particular intrusion upon military authority might have." Warren,

*The Bill of Rights and the Military,* 37 N.Y.U.L.Rev. 181, 187 (1962).

In *Mindes v. Seaman,* 453 F.2d 197 (5th Cir.1971), the court held that it would not review internal military affairs absent "an allegation of the deprivation of a constitutional right or an allegation that the military has acted in violation of applicable statutes or its own regulations." *Id.* at 201. We adopted the *Mindes* test, at least in part, in *Wallace v. Chappell,* 661 F.2d 729, 733 (9th Cir.1981), *rev'd on other grounds,* —— U.S. ——, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983), recognizing that litigation is potentially disruptive to military operations and creates difficulty in maintaining discipline. *Id.* at 732; *accord Henninger v. United States,* 473 F.2d 814, 815–16 (9th Cir.), *cert. denied,* 414 U.S. 819, 94 S.Ct. 43, 38 L.Ed.2d 51 (1973). It is clear that a court using its equitable powers to compel superior officers to disobey regulations at the instance of a subordinate is a serious threat to military discipline.

A court, however, is justified in using its power to compel military personnel to disobey regulations which the court has determined are repugnant to the Constitution or to statutory authority. *See Frontiero v. Richardson,* 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973); *cf. Harmon v. Brucker,* 355 U.S. 579, 78 S.Ct. 433, 2 L.Ed.2d 503 (1958) (per curiam) (holding that a court may review a decision of the Secretary of the Army to determine whether he acted in excess of his statutory authority). That is not the case here. Although Watkins' complaint included claims that the Army regulations in question are repugnant to the Constitution, the district court declined to rule on any constitutional question. Moreover, we note that this court has upheld similar regulations in *Beller v. Middendorf,* 632 F.2d 788 (9th Cir.1980), *cert. denied,* 452 U.S. 905, 101 S.Ct. 3030, 69 L.Ed.2d 405 (1981).

We realize that the court in *Lavin v. Marsh,* 644 F.2d 1378 (9th Cir.1981), affirming a summary judgment in favor of the Government, did reach the merits of an estoppel claim brought by a serviceman

without discussing the issue of reviewability. The *Lavin* court, however, was not obliged to decide the reviewability issue. Since the court resolved the estoppel issue in the Government's favor, the outcome of the case would have been the same even if the court had held the claim nonreviewable. *Lavin* is therefore not inconsistent with our determination here.

We hold, therefore, that the broad equitable powers the courts possess to regulate civilian life may not be used to force the military to disobey its own regulations absent a determination that the regulations cannot be given legal effect. Accordingly, the judgment of the district court must be reversed. There is no need to reach the Army's other contentions on appeal.

REVERSED and REMANDED.

NORRIS, Circuit Judge, concurring:

When Staff Sergeant Perry Watkins enlisted in the Army in 1967, he openly declared that he was homosexual. He then invested fourteen years of his life pursuing a career in the military, while never hiding his sexual preference. His performance as a soldier was exemplary, as Judge Choy states. Indeed, one officer called Sgt. Watkins the best clerk he had ever known. To their credit, his superior officers judged his performance on merit and promoted him rapidly, disregarding his homosexuality as irrelevant to their evaluations.

The Army rewarded Sgt. Watkins' years of outstanding service by destroying his chosen career. When he needed only five more years to qualify for retirement benefits, he was discharged solely because the Army decided to purge all homosexuals from its ranks by changing its regulations to make discharge of homosexuals mandatory rather than discretionary. In my view, this regressive policy demonstrates a callous disregard for the progress American law and society have made toward acknowledging that an individual's choice of life style is not the concern of government, but a fundamental aspect of personal liberty. *See, e.g., Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) (strik-

ing state statute banning use of contraceptives because it infringed on fundamental right of privacy); *Eisenstadt v. Baird,* 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972) (striking statute prohibiting sale of contraceptives to unmarried person because fundamental right of privacy not limited to what transpires in the marital relationship). After the change in regulations, Sgt. Watkins' superior officers could not save his military career, despite his exemplary record. As a consequence, our nation has lost a fine soldier, and Sgt. Watkins has suffered a manifest injustice.

Today, however, I have no choice but to concur in the majority's disposition of Sgt. Watkins' appeal. We are bound as a regular three-judge panel to follow *Beller v. Middendorf,* 632 F.2d 788 (9th Cir.1980), in which this court upheld the constitutionality of similar regulations adopted by the Navy. In so holding, our court abdicated one of its primary duties: to safeguard individual rights against intrusions engendered by governmental insensitivity or bigotry. To me, the Army's current bias against homosexuals is no less repugnant to fundamental constitutional principles than was its long-standing prejudice against minority servicemen.

In dissenting from the refusal of the court to rehear *Beller* en banc, I discussed my reasons for believing that these pernicious military regulations cannot withstand judicial scrutiny and that the importance of the issue justifies en banc review. *Miller v. Rumsfeld,* 647 F.2d 80 (9th Cir.1981) (Norris, J., dissenting from order denying suggestion of rehearing en banc). Those views remain unchanged.