**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**Kenneth A. LEE, et al.,
Defendants-Appellees,**

and

**Magistrate Bert S. Tokairin and the
United States District Court For
the District of Hawaii, Appellees.**

**Nos. 85–1047 through 85–1056.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 20, 1985.

Decided April 8, 1986.

John F. DePue, Atty., Dept. of Justice, Washington, D.C., for plaintiff-appellant.

David C. Schutter, Priscilla L. Mills, Honolulu, Hawaii, for defendants-appellees.

Before SKOPIL, FLETCHER, and ALARCON, Circuit Judges.

FLETCHER, Circuit Judge:

The United States appeals from the district court's refusal to entertain prosecutions against civilians accused of committing misdemeanor traffic offenses on Air Force bases in Hawaii because the Air

Force does not also prosecute military offenders in federal court. The Air Force has a policy of prosecuting civilian violators in federal court through the U.S. Attorney's Office, but retaining jurisdiction over military personnel for prosecution under the Uniform Code of Military Justice (UCMJ). In opposition to the Air Force's policy, the district court has a policy that all on-base traffic offenders must be prosecuted in federal court or none at all.

The government contends that in refusing to entertain the prosecutions of civilian offenders, the district court impermissibly interfered with prosecutorial discretion. In opposition, the district court argues that the Air Force policy constitutes impermissible selective prosecution, and that the court retains inherent authority to supervise the administration of criminal justice. We reverse and remand.

## FACTUAL BACKGROUND

In 1975, the U.S. District Court for the District of Hawaii established a policy relating to traffic offenses committed on military bases and other federal enclaves. Under this policy, civilians who commit traffic offenses on military bases may be referred to the district court for prosecution only if military offenders are also prosecuted in district court. Chief Judge Fong explained the basis for the policy as follows:

> The court has determined it to be inherently unfair for a serviceman in the Air Force who commits a similar offense as a civilian not [to] be subjected to the same penal provisions as that of the civilian. The Air Force "in house" handling of its own military offenders often provide[s] for non-criminal adjudication. This obvious discrepancy between a civilian adjudication of a traffic offense and the Air Force handling of the same violates the court's sense of fairness and equal treatment. Under the present Air Force system the district court would not

know of the sanctions being imposed upon service personnel offenders or whether the military violators were at all punished. Because of this potential for discrepancy in the prosecution or handling of traffic cases as to military and civilian defendants, the policy of this court continues that all traffic violators, whether civilian or military, must be prosecuted in the same tribunal or none at all.

Affidavit of Harold M. Fong at 2, attachment to U.S. Magistrate's Memorandum in Opposition to United States' Interlocutory Appeal (Jan. 10, 1985).

In December 1984, the U.S. Attorney met with court officials to discuss the possibility of changing the policy. The Air Force punished military traffic offenders exclusively under the UCMJ, but desired to prosecute civilian traffic offenders in district court. When the court declined to change its policy, the U.S. Attorney filed informations in federal district court charging a number of civilians with drunken driving on an Air Force installation in violation of Hawaii Rev.Stat. § 291–4, a federal offense under the Assimilative Crimes Act, 18 U.S.C. § 13.[1] Acting in accordance with the district court's policy, U.S. Magistrate Tokairin ordered that the cases be "REMANDED to the Air Force Office of the Staff Judge Advocate for disposition."

The government then filed an "Interlocutory Appeal Pursuant to Rule 7 of the Rules of Procedure for the Trial of Misdemeanors Before United States Magistrates or in the Alternative a Writ of Mandamus and/or Prohibition Directed to The Honorable Bert S. Tokairin, United States Magistrate for the District of Hawaii." Magistrate Tokairin, represented by counsel, filed an opposition to the appeal.

The district court denied the government's application for a writ of mandamus and dismissed the appeal. *United States v. Lee*, 604 F.Supp. 416 (D.Hawaii 1985). The

---

1. One defendant, Kenneth A. Lee, was charged with unlawful reentry upon a military installation in violation of 18 U.S.C. §. 1382, and unlawful possession of a military identification card in violation of 18 U.S.C. § 701. The district court has indicated that its policy applies only to traffic offenses, and that it is willing to accept jurisdiction over non-traffic offenses.

court first addressed the merits of the appeal, and held that the Air Force's differential treatment of civilian and military traffic offenders constituted selective prosecution, a denial of due process. The court denied the application for a writ of mandamus, finding that the requirements for a writ had not been met and that issuance of the writ would work a public injury. Addressing the issue of jurisdiction, the court held that the magistrate's order was not subject to appeal to the district court because the order did not dismiss the charges against the civilian defendants but rather "remanded" the cases to the Air Force. The court further held that even if the magistrate's order were appealable, the court would affirm, finding the order not erroneous as a matter of law.

The government filed a timely appeal to this court. The district court, represented by counsel, filed an Answering Brief.

### ANALYSIS

The district court denied the government's application for a writ of mandamus, and held that the magistrate's order was not appealable. The district court similarly argues in this appeal that this court lacks appellate jurisdiction. We first address these jurisdictional questions before turning to the merits of the claim of selective prosecution.

*A. The Reviewability of the Magistrate's Order by the District Court*

In disposing of the informations filed against the civilian traffic offenders, the magistrate issued a one-sentence Order of Remand: "IT IS HEREBY ORDERED that the following cases are REMANDED to the Air Force Office of the Staff Judge Advocate for disposition." When the government filed an appeal, the district judge held that the magistrate's order was not subject to appeal, and that a writ of mandamus was not warranted.

Rule 7(a) of the Rules of Procedure for the Trial of Misdemeanors Before United States Magistrates provides in part: "A decision or order by a magistrate which, if made by a judge of the district court, could be appealed by the government or defendant under any provision of law, shall be subject to an appeal to a judge of the district court." 18 U.S.C. app. at 672, 678 (1982). Title 18 U.S.C. § 3731 states in part: "In a criminal case an appeal by the United States shall lie to a court of appeals from a decision, judgment, or order of a district court dismissing an indictment or information." The issue here is whether the magistrate's "Order of Remand" was in fact an order dismissing the informations.

■ For purposes of determining appealability of an order, " 'the trial judge's characterization of his own action cannot control the classification of the action.' " *United States v. Scott*, 437 U.S. 82, 96, 98 S.Ct. 2187, 2196, 57 L.Ed.2d 65 (1978) (quoting *United States v. Jorn*, 400 U.S. 470, 478 n. 7, 91 S.Ct. 547, 553 n. 7, 27 L.Ed.2d 543 (1971) (opinion of Harlan, J.)). The court should instead focus on the effect of the ruling rather than the label placed on it. *United States v. Martin Linen Supply Co.*, 534 F.2d 585, 587 n. 3 (5th Cir.1976), aff'd, 430 U.S. 564, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977). An order which is " 'tantamount to the dismissal of an indictment' [is] therefore appealable under section 3731, though not labeled a dismissal." *United States v. Tranowski*, 702 F.2d 668, 670 (7th Cir.1983) (quoting *United States v. Esposito*, 492 F.2d 6, 10 (7th Cir.1973), cert. denied, 414 U.S. 1135, 94 S.Ct. 879, 38 L.Ed.2d 760 (1974)), cert. denied, — U.S. ——, 104 S.Ct. 3586, 82 L.Ed.2d 884 (1984).

■ In the case at bar, the magistrate labeled his ruling an "Order of Remand" and stated that the "cases are REMANDED to the Air Force Office of the Staff Judge Advocate for disposition." However, the term "remand" does not accurately describe the magistrate's treatment of the cases. "Remand" means "to send back. The sending by the appellate court of the cause back to the same court out of which it came, for purposes of having some further action taken on it there." Black's

Law Dictionary 1162 (5th ed. 1979) (citing *Amalgamated Workers Union of the Virgin Islands v. Hess Oil Virgin Islands Corp.*, 478 F.2d 540, 542 n. 1 (3d Cir.1973)). The U.S. Attorney initially filed these cases in federal district court. Given that the cases did not come to the district court from another tribunal, they could not be "remanded" to any other tribunal. Although the magistrate purported to remand the cases to the Air Force, the Air Force had no jurisdiction to prosecute these civilian traffic offenders in a military court. *O'Callahan v. Parker*, 395 U.S. 258, 267, 89 S.Ct. 1683, 1687, 23 L.Ed.2d 291 (1969).

■ The magistrate's remand order was in effect a dismissal of the informations. The government was thereby foreclosed from prosecuting the cases in federal court. The order was "tantamount to [a] dismissal," and therefore had it been issued by a district judge, it would have been appealable to the court of appeals. *Tranowski*, 702 F.2d at 670. Having been issued by a magistrate, it was thus appealable to the district court under Rule 7(a) of the Rules of Procedure for the Trial of Misdemeanors Before United States Magistrates.

### B. The Reviewability of the District Judge's Decision Denying the Writ and Dismissing the Appeal

■ As discussed above, 18 U.S.C. § 3731 permits the government to appeal a district court order dismissing an information. In his order, the district judge denied the government's application for a writ of mandamus and dismissed the government's appeal. Like the magistrate's "Order of Remand," the district judge's ruling effectively foreclosed the government from prosecuting the civilian offenders in federal court. An appeal to the court of appeals is, therefore, proper under § 3731. *See United States v. Forcellati*, 610 F.2d 25, 28 (1st Cir.1979) (appeal will lie from district court judgment affirming a magistrate's conviction), *cert. denied*, 445 U.S. 944, 100 S.Ct. 1342, 63 L.Ed.2d 778 (1980); *United States v. Moore*, 586 F.2d 1029, 1031–32 (4th Cir. 1978) (district court's direction of acquittal following conviction by magistrate is reviewable).

■ Title 28 U.S.C. § 1291 provides an alternative basis for appeal. Under § 1291, "final decisions" of the district courts are appealable to the courts of appeal. The Supreme Court has held that the finality requirement should be given a practical rather than a technical construction. *Gillespie v. United States Steel Corp.*, 379 U.S. 148, 152, 85 S.Ct. 308, 310, 13 L.Ed.2d 199 (1964). A final decision is generally one which ends the litigation and leaves nothing more for the court to do. *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945); *Weingartner v. Union Oil Co. of California*, 431 F.2d 26, 27 (9th Cir.1970), *cert. denied*, 400 U.S. 1000, 91 S.Ct. 459, 27 L.Ed.2d 451 (1971). Similarly, an order which effectively sends a party out of court is appealable. *Herrington v. County of Sonoma*, 706 F.2d 938, 939 (9th Cir.1983). A decision is final for purposes of appeal if an appeal is the only method of obtaining review. *In re Grand Jury Proceedings*, 649 F.2d 387, 388 (6th Cir.), *cert. dismissed*, 453 U.S. 946, 102 S.Ct. 17, 69 L.Ed.2d 1033 (1981).

■ In the case at bar, the district judge's decision effectively terminated the district court litigation, sending the parties out of federal court. An appeal to this court is the government's only avenue for obtaining review of the magistrate's "remand" of the cases and the district judge's dismissal of the appeal. Section 1291 thus provides a second jurisdictional basis for the appeal.

To cover all bases, the government also suggests that this court may assume jurisdiction under the All Writs Act, 28 U.S.C. § 1651(a), by treating the appeal as a petition for a writ of mandamus. We need not reach that issue.

### C. The District Court's Claim of Selective Prosecution

■ In our criminal justice system, the executive branch has broad discretion

to decide whom to prosecute. *Wayte v. United States,* — U.S. ——, 105 S.Ct. 1524, 1531, 84 L.Ed.2d 547 (1985). The presumption is that a criminal prosecution is undertaken in good faith and in a nondiscriminatory fashion. *United States v. Falk,* 479 F.2d 616, 620 (7th Cir.1973) (en banc). Once a case is filed, a federal court has a "virtually unflagging obligation ... to exercise the jurisdiction given [it]." *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976). There are limits, however, to prosecutorial discretion:

> [A]lthough prosecutorial discretion is broad, it is not " 'unfettered.' Selectivity in the enforcement of criminal laws is ... subject to constitutional constraints." In particular, the decision to prosecute may not be " 'deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification,' " including the exercise of protected statutory and constitutional rights.

*Id.* (citations omitted). To establish impermissible selective prosecution, a defendant must show that others similarly situated have not been prosecuted and that the prosecution is based on an impermissible motive. *United States v. Wayte,* 710 F.2d 1385, 1387 (9th. Cir.1983), *aff'd,* — U.S. ——, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985).

In the case at bar it is not the defendant but rather the district court which makes the claim of selective prosecution. Without any defense motion raising a claim of selective prosecution, the magistrate and the district judge sua sponte refused to entertain these cases. The district judge held that "the distinction between treatment of civilians and military personnel now sought by the Air Force is unsupported by any justifiable basis and is contrary to the Department of Defense policy for achievement of impartial judicial determinations." In making this conclusory statement, however, the district judge failed to analyze the two requisite elements of selective prosecution.

■ The Supreme Court has stated:

This Court has long recognized that the military is, by necessity, a specialized society separate from civilian society. We have also recognized that the military has, again by necessity, developed laws and traditions of its own during its long history.... [R]ecently we noted that "[t]he military constitutes a specialized community governed by a separate discipline from that of a civilian," and that "the rights of men in the armed forces must perforce be conditioned to meet certain overriding demands of discipline and duty...."

*Parker v. Levy,* 417 U.S. 733, 743–44, 94 S.Ct. 2547, 2555–56, 41 L.Ed.2d 439 (1974) (citations omitted). More recently, the Court observed:

> The need for special regulations in relation to military discipline, and the consequent need and justification for a special and exclusive system of military justice, is too obvious to require extensive discussion; no military organization can function without strict discipline and regulation that would be unacceptable in a civilian setting....
>
> ....
>
> The special status of the military has required, the Constitution has contemplated, Congress has created, and this Court has long recognized two systems of justice, to some extent parallel: one for civilians and one for military personnel.

*Chappell v. Wallace,* 462 U.S. 296, 300, 303–04, 103 S.Ct. 2362, 2365, 2367, 76 L.Ed.2d 586 (1983). Military personnel charged with offenses on a military installation are subject to military jurisdiction and may be tried by courts-martial. *Relford v. Commandant,* 401 U.S. 355, 369, 91 S.Ct. 649, 657, 28 L.Ed.2d 102 (1971). Civilians, however, are not subject to military jurisdiction. *O'Callahan v. Parker,* 395 U.S. 258, 267, 89 S.Ct. 1683, 1687, 23 L.Ed.2d 291 (1969); *Reid v. Covert,* 354 U.S. 1, 40–41, 77 S.Ct. 1222, 1242–43, 1 L.Ed.2d 1148 (1957).

■ The military's special status and need for effective discipline support the Air

Force's right to punish military traffic offenders under the UCMJ despite the fact that the military cannot also prosecute civilians under the UCMJ. These facts support the conclusion that military and civilian traffic offenders are not "similarly situated." They are not "people in similar circumstances." *See Attorney General of the United States v. The Irish People, Inc.*, 684 F.2d 928, 946 (D.C.Cir.1982), *cert. denied*, 459 U.S. 1172, 103 S.Ct. 817, 74 L.Ed.2d 1015 (1983). The first prong of the two-prong test for impermissible selective prosecution is therefore not met.

 The second prong, requiring proof that the prosecution was based on an unjustifiable standard such as race, religion, or other arbitrary classification such as a desire to penalize exercise of constitutional rights, is likewise not satisfied. The Air Force's policy indicates that the sole criterion for deciding whether to prosecute under the UCMJ or in federal court was the offender's status as either a civilian or a military service member. The distinction between military and civilian personnel is neither an "unjustifiable standard" nor an "arbitrary classification." Rather, it arises from the military's special status and need for discipline. The fact that the Army, Navy, and Marine Corps prosecute all traffic offenders in district court does not invalidate the Air Force's policy of treating civilian and military offenders differently. There was thus no impermissible motive involved in the Air Force's decision to prosecute only civilians in district court.

The district court in its decision emphasized the potential discrepancy in penalties imposed on civilian and military offenders by two different tribunals. The court expressed concern that civilians prosecuted in district court often incur fines, increased insurance premiums, and license suspension, while Air Force personnel might escape criminal adjudication completely. However, the military's need for special discipline logically encompasses the right to impose its own penalties, whether they be viewed as harsher or more lenient than those imposed on civilians.

We REVERSE the district court's dismissal of the government's appeal from the magistrate's "Order of Remand." We REMAND the cases to the district court to reinstate the informations and for further proceedings consistent with this opinion.

SKOPIL, Circuit Judge, concurring,

I agree we possess appellate jurisdiction under either 18 U.S.C. § 3731 (1982) or 28 U.S.C. § 1291 (1982). I also agree there was no impermissible selective prosecution in these cases. Nevertheless, I write separately to voice my concern that the Air Force's policy of refusing to refer its personnel for prosecution in federal court violates at least the spirit of Department of Defense policies and creates an unfortunate impression of unnecessary disparate treatment between civilians and military personnel accused of identical crimes.

Until 1980, Department of Defense Instruction, DoD Inst. 6055.4 (Nov. 7, 1978) provided that all traffic violations occurring on military installations must be referred to a United States magistrate or to a state or local magistrate. An amendment to that policy provided that such referrals may be made. The amended policy nevertheless makes clear that such referrals are made "in the interest of impartial judicial determination and effective law enforcement." DoD Inst. 6055.4 (amended June 4, 1980). Despite this policy directive, the Air Force has decided its personnel should be punished exclusively under the Uniform Code of Military Justice. See AF Reg. 110–15 (Nov. 1, 1982). I share the district court's concern that there appears to be no justifiable basis for that decision. See *United States v. Lee*, 604 F.Supp. 416, 418 (D.Hawaii 1985).

We have recognized that the broad powers courts possess to regulate civilian life may be in large part inapplicable to the military. *Watkins v. United States Army*, 721 F.2d 687, 690 (9th Cir.1983), citing *Chappell v. Wallace*, 462 U.S. 296, 103 S.Ct. 2362, 2367, 76 L.Ed.2d 586 (1983). Military and civilian life are regulated by two systems of justice, parallel but distinct.

*Watkins,* 721 F.2d at 690. Nevertheless, no valid purpose can be served by regulation which results in unjustified, disparate treatment. See *United States v. Walker,* 552 F.2d 566, 567 n. 3 (4th Cir.), cert. denied, 434 U.S. 848, 98 S.Ct. 157, 54 L.Ed.2d 116 (1977). Here, the Air Force argues there is no basis for the district court's assumption that military offenders are likely to escape criminal prosecution. Because the Air Force is unwilling to routinely supply information to the district court on Air Force traffic offenders, it is impossible to accept the argument of the Air Force.

The district court also expressed concern with the collateral consequences incurred by civilians but not by Air Force personnel. The court observed that in addition to sentences imposed, civilians may also be subject to increases in automobile insurance premiums and the possible suspension of driver licenses. *Lee,* 604 F.Supp. at 418. Air Force violators avoid such sanctions because the Air Force does not forward to the state Traffic Violations Bureau any reports regarding traffic violations on base. AF Reg. 125.14 ch. 2, ¶ 2–3(a)(b) requires the Air Force to report to the host state all moving violations and infractions of motor vehicle laws if "statutory authority exists within the host state for reciprocal suspension and revocation of driving privileges." The Air Force explains it is not technically required to report because of incompatibility between the state and military "point" systems. In other words, the Air Force contends that because there does not exist symmetry between military and state point systems, the Air Force refuses to provide the state with reports of traffic violations by military personnel on base. I find the Air Force's rationale specious. Additionally, the Army, Navy and Marines have solved this "incompatibility" by simply agreeing to the state's point system.

I do not dispute there exists concurrent jurisdiction of federal and military courts over military personnel who commit traffic violations on base. *Grafton v. United States,* 206 U.S. 333, 348, 27 S.Ct. 749, 752, 51 L.Ed. 1084 (1907); *Walker,* 552 F.2d at 567. But see *United States v. Smith,* 614 F.Supp. 454, 459 (D.Me.1985) (Assimilated Crimes Act does not assimilate, as against military personnel subject to the UCMJ, state statutes punishing offenses that are enumerated in the UCMJ; thus military violators charged in federal court under the ACA must be dismissed). A federal court clearly has jurisdiction to try a military offender when such an offender is delivered to civil authorities for prosecution. *Peek v. United States,* 321 F.2d 934, 936–37 (9th Cir.1963), cert. denied, 376 U.S. 954, 84 S.Ct. 973, 11 L.Ed.2d 973 (1964). While the Air Force is not constitutionally required to refer its personnel to federal court, Armed Forces' policy and the avoidance of an unnecessary appearance of disparate treatment should cause the Air Force to reconsider its maverick decision to handle "in-house" Air Force personnel who commit traffic violations on base.