53 F.3d 337
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Wes BEVELHYMER, Plaintiff-Appellant,
v.
CLARK COUNTY, William P. Henry, Defendants-Appellees.
 No. 94-15203.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 16, 1995.
Decided April 26, 1995.
 
 Before: FLETCHER, REINHARDT, and NOONAN, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Wes Bevelhymer appeals the district court's dismissal of his 42 U.S.C. Sec. 1983 claim against William Henry and his state law tort claim against Henry and Clark County. We affirm.
 
 FACTS
 
 3
 This appeal arises out of alleged conduct by defendant Henry after Henry discovered that Bevelhymer had begun a romantic relationship with Henry's former fiance, Ginger Gardner. During the relevant time period, Henry was a Chief Deputy District Attorney in the criminal division of the Clark County District Attorney's office. Bevelhymer alleges that Henry became jealous of Bevelhymer's relationship with Gardner and used his resources as a Chief Deputy to investigate Bevelhymer's personal life and finances. Henry learned that Bevelhymer had a child from a previous marriage and thought Bevelhymer was not paying the statutorily prescribed amount of child support corresponding to his current income.
 
 
 4
 Henry then contacted a caseworker in the District Attorney's child support enforcement division, misrepresented that he worked in the civil division and was investigating Bevelhymer in a civil matter, and asked the caseworker to verify Bevelhymer's current income. Bevelhymer also alleges that Henry either contacted Lauwana Kizzire, Bevelhymer's ex-wife, or had another employee at the District Attorney's office contact his ex-wife to inform her that she was entitled to additional support and to offer the office's services in litigating any claim against Bevelhymer.
 
 
 5
 In a civil suit filed on November 30, 1992, Bevelhymer sued Henry under 42 U.S.C. Sec. 1983, alleging violations of his constitutional rights under the First, Ninth, and Fourteenth Amendments, and sued both Henry and Clark County for intentional infliction of emotional distress.
 
 
 6
 The district court dismissed Henry's suit, holding that Henry was entitled to qualified immunity because Bevelhymer's right to associated with Gardner was not protected under the First Amendment and that, to the extent that it was protected under the Fourteenth Amendment, his claim was meritless in light of "his own admission" that "he was not induced to give up this right" and that Gardner "voluntarily broke off their relationship." Because it dismissed Bevelhymer's section 1983 claim, the court declined to exercise supplemental jurisdiction over his state law claim against Henry and Clark County.
 
 
 7
 On September 7, 1993, Bevelhymer filed an emergency motion for reconsideration of the district court's order or, alternatively, a motion to amend his complaint. Bevelhymer argued that the district court erroneously assumed that Gardner voluntarily stopped dating Bevelhymer to marry another man. He alleged that Henry's conduct left him feeling paranoid and fearful, which caused him to curtail his association with Gardner, which changed the nature of his relationship with Gardner, which in turn led to their mutual break-up. The district court denied Gardner's motion, holding that Bevelhymer's proposed amended complaint would not cure the original complaint's defects because Bevelhymer had failed to show that the First Amendment protected his right to associate with Gardner.
 
 DISCUSSION
 
 8
 Bevelhymer claims that Henry violated his right to privacy under the Ninth Amendment and his rights to free speech and association under the First and Fourteenth Amendments. As a public official acting in a discretionary capacity, Henry is entitled to qualified immunity "insofar as [his] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). We address each of Henry's constitutional claims in turn.
 
 A. Ninth Amendment
 
 9
 Bevelhymer claims that Henry violated his Ninth Amendment right to privacy by investigating his child support obligations and contacting Kizzire. This argument is "meritless," however, because the Ninth Amendment "has not been interpreted as independently securing any constitutional rights for purposes of making out a constitutional violation." Schowengerdt v. United States, 944 F.2d 483, 490 (9th Cir. 1991), cert. denied, U.S. , 112 S. Ct. 1514 (1992); accord Standberg v. Helena, 791 F.2d 744, 788 (9th Cir. 1986).
 
 B. First Amendment
 
 10
 Bevelhymer claims that his right to speak and associate with Gardner was protected by the First Amendment and that Henry's conduct had a chilling effect on Bevelhymer's exercise of this right. However, no First Amendment conduct is at issue in this case. The First Amendment's freedom of association generally protects associations whose purposes are "explicitly stated in the amendment: speaking, worshipping, and petitioning the government." IDK, Inc. v. Clark County, 836 F.2d 1185, 1192 (9th Cir. 1988). Although the Eleventh Circuit has held that the First Amendment also protects dating relationships, Wilson v. Taylor, 733 F.2d 1539 (11th Cir. 1984),[1] Wilson was decided before the Supreme Court distinguished between a right of association protecting "certain intimate human relationships" and a "right of association for the purpose of engaging in those activities protected by the First Amendment." Roberts v. United States Jaycees, 468 U.S. 609, 617-18 (1984). While the latter right is protected by the First Amendment, the source of the former is most often identified as the Fourteenth Amendment. IDK, 836 F.2d at 1192 (listing cases). In IDK, decided after Roberts, we held that the right asserted by the plaintiff in Wilson was the freedom of intimate association under the Fourteenth Amendment, not the First Amendment freedom of expressive association. Id. at 1192-93.
 
 C. Fourteenth Amendment
 
 11
 As least by 1988, it was clearly established that the Fourteenth Amendment protects relationships between "individuals [who] are deeply attached and committed to each other as a result of their having shared each other's thoughts, beliefs, and experiences." IDK, 836 F.2d at 1193; see also Wilson, 733 F.2d at 1544 ("A state violates the fourteenth amendment when it seeks to interfere with the social relationship of two or more people"). Despite Bevelhymer's failure to cite IDK and Wilson in the district court, we may consider those cases in determining whether Bevelhymer has alleged the violation of a right clearly established at the time of the alleged conduct. See Elder v. Holloway, U.S. , 114 S. Ct. 1019, 1022 (1994). Thus, we reject Henry's claim that a reasonable public official could not have known that the Fourteenth Amendment protects intimate association between unmarried couples.
 
 
 12
 Despite the clarity of the law protecting intimate association, we nonetheless affirm the district court's dismissal of Bevelhymer's claim because Bevelhymer has failed to claim an actual intrusion into his right to associate with Gardner. To state a claim under section 1983, Bevelhymer must adequately allege facts tending to show that there was a constitutional injury and that Henry's conduct proximately caused it. Arnold v. International Business Machines Corp., 637 F.2d 1350, 1355-56 (9th Cir. 1981). Bevelhymer does not allege that Henry or any other attorney in the D.A.'s office initiated any child support enforcement action, unsubstantiated or otherwise, against him as a result of his association with Gardner. Cf. Wilson, 737 F.2d at 1542-44 (plaintiff terminated from public employment because of dating relationship).
 
 
 13
 Rather, the constitutional injury Bevelhymer alleges is the termination of his relationship with Gardner. Bevelhymer's complaint is at best vague in describing the nexus between Henry's conduct and the alleged injury. His original complaint alleged that Henry's conduct changed "the nature of the relationship" between Gardner and Bevelhymer, "causing [them] to break off their relationship." When the district court assumed that Gardner left Bevelhymer to marry another man and therefore, that Bevelhymer was not induced to forego associating with Gardner, Bevelhymer requested to amend his complaint to allege that, as a result of Henry's conduct, Bevelhymer was "intimidated and afraid and curtailed his calling and visiting Gardner so the nature of the relationship between [him] and Gardner changed causing [him] and Gardner to break off their relationship." His attempt to connect the termination of his relationship with Gardner to Henry's alleged attempt to encourage the child support enforcement division of his office to investigate Bevelhymer for failure to pay child support is too tenuous to withstand scrutiny. According to Bevelhymer's own admissions, Gardner either left him to marry another man or Bevelhymer himself became less enthusiastic about the relationship. Although we certainly do not approve Henry's reprehensible conduct as alleged in Bevelhymer's complaint, Bevelhymer has failed to allege facts which would demonstrate that Henry's conduct, urging Bevelhymer's ex-wife and the District Attorney's office to initiate a child support enforcement action against Bevelhymer, caused the termination of his relationship with Gardner.
 
 
 14
 AFFIRMED.
 
 REINHARDT, Circuit Judge, dissenting:
 
 15
 The essence of Wes Bevelhymer's complaint is that Henry, displeased with the romantic relationship between Bevelhymer and Henry's former fiance Ginger Gardner, utilized both his position as Clark County District Attorney and the resources of Clark County to attempt to disrupt the relationship. Bevelhymer contends that Henry's actions ultimately resulted in the termination of the Bevelhymer-Gardner relationship. In sum, he alleges that Henry violated his constitutionally protected right of intimate association.
 
 
 16
 The majority finds fault with Bevelhymer's failure to describe with sufficient precision the nature of Henry's interference with his relationship with Gardner as well as his failure to explain meticulously enough the link between Henry's actions and his own asserted injury. In my view, a fair reading of Bevelhymer's complaint states a cognizable claim. Henry's intrusions into Bevelhymer's intimate association, if true, constitute an actionable injury; that the intrusion caused the termination of the Gardner relationship is an important but not a necessary part of Bevelhymer's claim. If, in the majority's view, the complaint is not specific enough, it should remand so that Bevelhymer may be given another opportunity to amend. For these reasons, I respectfully dissent.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 In Wilson, the Eleventh Circuit held that the defendants violated both the First and Fourteenth Amendments by firing a police officer because the officer was dating the daughter of a convicted felon who was reputed to be a key figure in organized crime. 733 F.2d at 1542-44